**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary E. GALBRAITH, Defendant–
Appellant.**

No. 92–4103.

United States Court of Appeals,
Tenth Circuit.

Feb. 17, 1994.

Rehearing Denied June 24, 1994.

---

* I concur in Section III of the order, only insofar as it denies the state's motions as moot.

Scott M. Matheson, Jr., U.S. Atty., and Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, UT, for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, Jenine Jensen, Asst. Federal Public Defender, Denver, CO, for defendant-appellant.

Before TACHA and BRORBY, Circuit Judges, and BROWN,* Senior District Judge.

TACHA, Circuit Judge.

Defendant Gary E. Galbraith appeals from a judgment of conviction for one count of wire fraud as an aider and abettor, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2(a), (b). He was sentenced to twenty-one months' incarceration and three years' supervised release, and ordered to pay $50,000 in restitution. We revise the sentence, vacate the restitution order, and affirm the judgment in all other respects.[1]

Defendant and others became involved in a scheme to obtain control of the majority of stock of a public corporation, drive up the price, then sell it to a European pension fund. However, the scheme was, in fact, an undercover sting operation, and the pension fund did not exist. An undercover agent paid defendant $50,000 as a "fee" for his services, although the defendants requested $80,000. The FBI terminated the investigation before any stock was bought or sold.

Defendant was charged with one count of conspiracy, one count of securities fraud, twenty-one counts of wire fraud, and one count of offering to buy or sell nonregistered securities. Sixteen wire fraud counts and the conspiracy count were submitted to the jury. The jury acquitted defendant of all charges except one wire fraud count. That count involved a telephone call between defendant and codefendant Robert Lund on September 24, 1989.

Defendant contends the evidence was insufficient to establish that the September 24 telephone call was an interstate call. When the sufficiency of the evidence is challenged, the test is whether the evidence and reasonable inferences therefrom, viewed in the light most favorable to the government, would allow a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Markum,* 4 F.3d 891, 893 (10th Cir.1993). Sufficiency of the evidence is a question of law subject to de novo review. *Id.*

The elements of the crime of wire fraud are 1) a scheme to defraud, and 2) use of interstate wire communications to facilitate the scheme. *United States v. Drake,* 932 F.2d 861, 863 (10th Cir.1991). Defendant concedes there was evidence that the September 24 telephone call between himself and Lund was recorded on a wiretap placed on one of Lund's Utah telephone lines, and that he lives in Washington state. Further, evidence was presented that an FBI agent telephoned defendant at a Spokane, Washington, telephone number on September 22, and met with defendant in Spokane on September 26.

---

* Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

■ The government contends the jury could have reasonably inferred that defendant did not leave Washington state between September 22 and 26. The jury may draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). An inference must be more than speculation and conjecture to be reasonable, however. *Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir.1987). While "[t]he line between 'reasonable inferences' and mere speculation is impossible to define with any precision," *id.,* " '[i]f there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts,' " *id.* (quoting *Tose v. First Pa. Bank, N.A.,* 648 F.2d 879, 895 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981)). We conclude there is both a reasonable and logical probability that a person who is in his home state two days before and two days after a given date would have been there on the given date. Therefore, there was sufficient evidence for the jury to find that the September 24 telephone call was an interstate call.

Defendant next argues the jury was erroneously instructed that the government had to prove, as an element of the crime of wire fraud, that the defendant "used or caused to be used, any means or instruments of transportation or communication in interstate commerce, *or used the mails* in furtherance of the scheme." R.Supp. Vol. III, doc. 235, JI–30 (emphasis added). He maintains that wire fraud is not proven by evidence of use of the mails, and the jury must have been confused because mail fraud had been alleged as part of the securities fraud count.

■ In a challenge to a jury instruction, we determine "whether the jury, considering the instructions as a whole, was misled." *United States v. Smith,* 13 F.3d 1421 (10th Cir.1994). Because defendant did not timely object to this instruction, we review for plain error. *Id.* Plain error is one that "affects the defendant's right to a fair and impartial trial." *Id.* It must have been both " 'obvious and substantial.' " *Id.* (quoting *United States v. Brown,* 996 F.2d 1049, 1053 (10th Cir.1993)) (additional citations omitted).

■ Jury instruction 33 clarified that to establish the relevant element of wire fraud, the government had to prove that "the defendant used or caused to be used *wire communication* in furtherance of the unlawful scheme." R.Supp. Vol. III, doc. 235, JI 33 (emphasis added). Defendant argues, however, that JI 33 was also erroneous because it instructed the jury that "[t]he use of wire communication in interstate commerce means *to use the telephone.*" *Id.* (emphasis added). He notes that mere use of a telephone, as opposed to interstate use, is insufficient to prove wire fraud. Again, because no objection was made on this basis, we review for plain error.

Jury instruction 29 informed the jury that the wire communication had to be in interstate commerce. *Id.,* JI 29. Jury instruction 30 defined the relevant element of the offense of wire fraud as requiring proof that the defendant "used or caused to be used, any means or instruments of transportation or communication *in interstate commerce.*" *Id.,* JI 30 (emphasis added). Given that these instructions specified the wire communication had to be in interstate commerce, we conclude the instructions could not have misled the jury to the point that defendant's right to a fair and impartial trial was compromised.

■ Next, defendant argues that because the indictment alleged the same acts that constituted the conspiracy charge also constituted the scheme to defraud element of the wire fraud charge, and he was acquitted of conspiracy, he should have been acquitted of wire fraud. The issue presented is one of inconsistent verdicts. The government concedes the inconsistency, but maintains that this does not provide grounds for reversal. We agree.

The Supreme Court held in *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), that consistency in verdicts is not necessary. Where inconsistent verdicts are rendered,

"[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

*Id.* (quoting *Steckler v. United States,* 7 F.2d 59, 60 (2d Cir.1925)). *Dunn* was applied to uphold a conviction for using the telephone to facilitate the offenses of conspiracy to possess cocaine and possession of cocaine, although the defendant was acquitted of the underlying drug charges. *United States v. Powell,* 469 U.S. 57, 69, 105 S.Ct. 471, 479, 83 L.Ed.2d 461 (1984). *See also United States v. Hill,* 971 F.2d 1461, 1468–69 (10th Cir. 1992). These decisions compel us to conclude the inconsistent verdicts in this case are not grounds for reversal.

 The next issue is whether the indictment was constructively amended. A constructive amendment occurs " 'if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment.' " *Hunter v. New Mexico,* 916 F.2d 595, 599 (10th Cir.1990) (quoting *United States v. Apodaca,* 843 F.2d 421, 428 (10th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988)), *cert. denied,* 500 U.S. 909, 111 S.Ct. 1693, 114 L.Ed.2d 87 (1991). "The specific inquiry is whether the jury was permitted to convict the defendant upon 'a set of facts distinctly different from that set forth in the indictment.' " 916 F.2d at 599 (quoting *United States v. Chandler,* 858 F.2d 254, 257 (5th Cir.1988) (further citations omitted). To rise to the level of a constructive amendment, "the amendment must effectively alter the substance of the indictment." *Id.* A constructive amendment is reversible per se. *Id.*

 Defendant argues there was a constructive amendment because he was acquit-

ted of the conspiracy charge, which involved the same scheme to defraud as alleged in the wire fraud charge. Therefore, defendant speculates, the jury must have convicted him of committing some other scheme to defraud than that alleged in the indictment.

The problem with this argument is that it assumes, as in the case of the inconsistent verdicts argument, that the acquittal on the conspiracy charge was the jury's "correct" conclusion, that is, that the jury did not find the government had proven the scheme which underlay both the conspiracy and wire fraud charges. However, it is equally possible that the jury was convinced of defendant's guilt but through mistake, compromise, or lenity, acquitted him on the conspiracy charge. *See Powell,* 469 U.S. at 65, 105 S.Ct. at 476.

Further, defendant has not identified any evidence presented at trial that could have supported a guilty verdict based on a scheme to defraud other than that alleged in the indictment. He has not convinced us that the jury was permitted to convict him upon a set of facts distinctly different from that set forth in the indictment.

 Defendant's next contention is that the district court erred in finding, for purposes of sentencing, that the intended or probable loss of the scheme was $80,000, which resulted in a five-level increase in the base offense level of six. U.S.S.G. § 2F1.1 (1987).[2] "We review a district court's determination of a U.S.S.G. § 2F1.1 loss under the clearly erroneous standard, but the factors a district court properly may consider [are] reviewed de novo." *United States v. Gallegos,* 975 F.2d 710, 712 (10th Cir.1992).

The government argued that the probable or intended loss should be $623,920, which represented the number of shares owned or controlled by the defendants multiplied by the price at which they intended to offer the shares. Instead, the district court found the probable or intended loss was $80,000, which was the amount defendants requested from

**2.** The district court also added a two-level enhancement for more than minimal planning and/or more than a single victim, and a three-

level enhancement for defendant's role in the offense, resulting in a total offense level of sixteen.

the undercover agent as a fee for their services.

■■■ As there was no actual loss, "intended or probable loss may be considered." *United States v. Smith*, 951 F.2d 1164, 1166 (10th Cir.1991) (citing Application note 7, Guidelines § 2F1.1). Defendant contends that because his offense was committed in response to an undercover sting operation structured so there was no possibility of loss to a victim, the intended or probable loss was zero. He relies on *United States v. Sneed*, 814 F.Supp. 964 (D.Colo.1993).

In *Sneed*, the defendant was also caught in an undercover sting operation involving a scheme to manipulate the value of stock. The district court concluded that "the correct loss figure in an undercover 'sting' operation—at least one structured such as this one was—is zero." *Id.* at 969. The court reasoned that it would be a misapplication of the guidelines to rely on the loss that the defendant subjectively thought he was inflicting, as opposed to the loss that his activities probably would have caused in the normal course of events. *Id.* at 970–71.

> [U]se of 'intended' loss as a measure of harm under section 2F1.1 is limited by a requirement that a sentencing court examine the circumstances objectively to see whether it was realistically possible for defendant to inflict the intended loss.... Where the scheme could not possibly have resulted in the intended loss under any circumstances, then 'intended' loss should not be used.

*Id.* at 971.

The *Sneed* court relied, in part, on this court's decision in *United States v. Santiago*, 977 F.2d 517 (10th Cir.1992). There, the defendant was convicted of attempting to defraud his insurance company by reporting that his car had been stolen when, in fact, he had delivered it to a coworker to be destroyed. *Id.* at 519. He submitted a claim of $11,000 for the "stolen" car. *Id.* However-

er, due to police intervention, no insurance money was ever paid. The car's "blue book" value was $4,800, which was the highest amount the insurance company would have paid under its policy. *Id.*

After observing there was no actual loss because defendant's attempt to defraud his insurance company was prevented by police intervention, we concluded that the intended and probable loss were both $4,800. This was because an intended loss under § 2F1.1 "cannot exceed the loss a defendant in fact could have occasioned if his or her fraud had been entirely successful," regardless of whatever loss the defendant subjectively believed he or she could impose on the fraud victim. *Id.* at 524. Because the defendant's insurance company would not have paid more than the $4,800 blue book value, his intended loss could not have been greater, regardless of his subjective belief as to his car's value. We cautioned that the loss subjectively intended by a defendant should not control "when the economic reality is that the probable or actual loss could not in any circumstances have exceeded a discernible lesser amount." *Id.* See also *Smith*, 951 F.2d at 1168 (to meet requirements of § 2F1.1, must show by preponderance of evidence that defendant realistically intended a certain loss, or that a loss in that amount was probable); *United States v. Watkins*, 994 F.2d 1192, 1196 (6th Cir. 1993) (regardless of intent, defendant may not have sentence enhanced for harm he or she was incapable of inflicting).

■ Under applicable authority, the loss defendant subjectively intended to cause is not controlling if he was incapable of inflicting that loss. Because this was an undercover sting operation which was structured to sell stock to a pension fund that did not exist, defendant could not have occasioned any loss even if the scheme had been completed.[3] We conclude the intended or probable loss was zero.

**3.** We reject the government's attempt to distinguish *Sneed* based on language in that opinion that a different result would obtain if any of the schemers had intended for the stock to get into the hands of the public. 814 F.Supp. at 968. The government notes that defendant intended for the stock to be sold to the "public," i.e., the pension fund. Regardless of defendant's subjective intent, however, the shares could not have been sold to this "public" because the pension fund did not exist.

The government maintains that $80,-000 was a measure of the defendant's gain, which may be considered as an alternative estimate of loss. Application note 8 to § 2F1.1 permits the court to estimate actual loss in several ways, including by measuring gain. *United States v. Haddock,* 12 F.3d 950, 960 (10th Cir.1993). However, the loss enhancement "is only for loss to victims, not for gain to defendants. The defendant's gain may be used only as an 'alternative estimate' of that loss; it may not support an enhancement on its own if there is no actual or intended loss to the victims." *Id.* Because there was no actual or intended loss to victims in this case, gain to the defendant cannot be used as an alternative estimate of loss.

The government points out that, although the *Sneed* court found the loss to be zero, it upwardly departed from the guidelines due to the seriousness of the defendant's conduct. 814 F.Supp. at 979. The government argues that the district court would have imposed the same sentence in this case regardless of whether it calculated the loss at $80,000 or, as in *Sneed,* found the loss to be zero but then upwardly departed. We cannot make that assumption, however, and the government has not argued that we should remand for resentencing. Defendant notes that the maximum sentence for his adjusted offense level of eleven would be fourteen months, which he has already served. He also has not requested resentencing. We conclude the sentence should be revised to fourteen months, and defendant should be released from further custody.

Finally, the parties agree the $50,000 restitution order was invalid under *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). We agree and vacate that order.

The sentence is REVISED to fourteen months and defendant is released from further custody. The restitution order is VACATED. The judgment of conviction of the United States District Court for the District of Utah is AFFIRMED in all other respects.