**UNITED STATES of America, Appellee,**

**v.**

**John L. FALCIONI, also known as Flash, Defendant–Appellant.**

**No. 417, Docket 94–1116.**

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1994.

Decided Jan. 9, 1995.

Richard A. Reeve, New Haven, CT, Asst. Federal Public Defender (Thomas G. Dennis, Federal Public Defender, of counsel), for defendant-appellant.

Kari A. Pedersen, Bridgeport, CT, Asst. U.S. Atty., D. Conn. (Christopher F. Droney, New Haven, CT, U.S. Atty. D. Conn., of counsel), for appellee.

Before: FEINBERG, VAN GRAAFEILAND and MINER, Circuit Judges.

FEINBERG, Circuit Judge:

John L. Falcioni appeals from a sentence imposed by the United States District Court for the District of Connecticut, T.F. Gilroy Daly, J., in February 1994, after Falcioni pled guilty to the charge of bribery of a public official. 18 U.S.C. § 201(b)(1)(C). The judge sentenced Falcioni to five months in prison to be followed by two years of supervised release, the first five months to be served in a halfway house, and a $50 special assessment. Falcioni had tried to bribe an official of the Internal Revenue Service (IRS) in order to discharge a friend's $41,000 tax liability. The issue on appeal is whether the district court calculated the applicable guideline range properly when it based an offense level increase on the $41,000 figure. For reasons indicated below, we hold that the court did not err in applying the relevant guideline, and we affirm.

## I. Background

In April 1993, Falcioni was a social acquaintance of IRS Revenue Officer Howard Kenneth Elwood. At that time, Falcioni met with Elwood and tried to bribe him in order to "get rid of" an outstanding tax liability of William Thomas, a friend of Falcioni. Elwood told IRS security officers about the attempt and worked undercover to collect evidence against Falcioni.

During a tape recorded meeting that followed, Falcioni gave Elwood $750, and Elwood gave him a self-addressed envelope with instructions to have Thomas mail his current tax return directly to Elwood. Two days later, Elwood received Thomas's tax return in the mail. At their final meeting shortly thereafter, Falcioni gave Elwood another $750. Elwood then gave Falcioni what purported to be a receipt for Thomas's entire tax liability, approximately $41,000. Elwood instructed Falcioni to give the receipt to Thomas in case he was ever questioned about his tax liability. Falcioni was arrested, and Thomas, later questioned by government investigators, admitted that he had paid $5,000 to Falcioni to give to a revenue officer so that his tax liability would be eliminated. Thomas had intended to give Falcioni a few hundred dollars for serving as middleman and did not know that Falcioni had kept $3,500 of the $5,000 payment for himself.

Thereafter, Falcioni pled guilty to a bribery charge, and the Probation Officer prepared a presentence investigation report (PSI). The PSI calculated Falcioni's adjusted offense level by reference to U.S.S.G. § 2C1.1, which applies to violations of 18 U.S.C. § 201, bribery of a public official. The PSI calculation included a five-level increase in the base offense level because the intended loss to the government was more than $40,000. § 2F1.1(b)(1)(F). The PSI also included, and the government recommended, a two-level downward adjustment for acceptance of responsibility. The resulting guideline level was 13, which corresponds

with a sentencing range of 12–18 months given defendant's criminal history category of I.

Before Falcioni was sentenced, he challenged the calculation in the PSI insofar as it based the offense level increase on the $41,000 figure. He argued that the figure of $3,500, representing the money he actually took as payment for his services, should be used to determine the increase under § 2C1.1 and § 2F1.1. The government opposed Falcioni's interpretation of the guidelines. At sentencing, the district court rejected Falcioni's argument and adopted the calculation in the PSI. The district court then departed downward one offense level and sentenced Falcioni to five months in prison and five months in a halfway house—the bottom of the range.

This appeal followed. The basis of the appeal is that the court should have increased the base offense level only by the number of levels from the table in § 2F1.1 commensurate with $3,500 instead of $41,000. This would have lowered Falcioni's guideline range.

## II. Discussion

■ Appellant has two principal arguments in this court. First, the district court misapplied the guidelines because the standard of "intended loss" is inapplicable in cases involving reverse sting operations; and second, the figure of $3,500, representing the benefit appellant actually received, should have been used in the relevant calculations. The government argues primarily that $41,000 was the correct figure. (The government also contends that appellant waived his principal arguments by conceding in the district court that the guideline range was correctly calculated. We do not agree that any waiver occurred).

The material facts are undisputed. The issues before us are legal questions regarding the district court's application of the Sentencing Guidelines, and are subject to de novo review. *United States v. Mucciante,* 21 F.3d 1228, 1237 (2d Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 361, 130 L.Ed.2d 315 (1994); *United States v. Stanley,* 12 F.3d 17, 20 (2d Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994).

The parties agreed in the district court that the applicable guideline section was § 2C1.1. Under § 2C1.1(a) the base offense level is 10. Subsection (b)(2)(A) of § 2C1.1, covering specific offense characteristics, provides in pertinent part:

If the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense, *whichever is greatest,* exceeded $2,000, increase by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).

(Emphasis supplied). The PSI determined that Thomas's $41,000 liability to the IRS was the amount the government would have lost had the plan succeeded. The PSI used this number as the basis for applying an increase in offense level under § 2F1.1 as instructed in § 2C1.1(b)(2)(A), quoted immediately above. The table in § 2F1.1 calls for an increase of five levels when the intended loss is greater than $40,000. If the PSI had relied instead on the $3,500 that appellant received as payment for services, application of § 2F1.1 would have required only a one-level increase. The district court agreed with the government that the PSI used the correct figure ($41,000) to calculate the increase in Falcioni's offense level.

The district court's ruling falls squarely within the language of the guideline. Loss to the government "includes both actual and intended loss." § 2C1.1, Application Note 2; see also § 2F1.1, Application Note 7 ("[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."); *Mucciante,* 21 F.3d at 1238.

Citing *United States v. Galbraith,* 20 F.3d 1054, 1058–60 (10th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 233, 130 L.Ed.2d 157 (1994) and *United States v. Watkins,* 994 F.2d 1192, 1196 (6th Cir.1993), appellant argues that the standard of "intended loss" is inapplicable to his case because his scheme could not possibly have succeeded. It is undisputed that no actual loss occurred in this case. Appellant argues that given the nature of the undercover operation, no loss

could have occurred. Officer Elwood was operating in an undercover capacity before any specific bribe offer was made and before any money was exchanged, and he acted upon the specific instruction of the IRS Internal Security Division. In these circumstances, while Falcioni had the subjective intention of succeeding with the bribe, he contends that there was no possibility of success.

We do not agree. The scheme could have succeeded if Revenue Officer Elwood had accepted the bribe. This was not a reverse sting operation like the one that prompted the court in *Galbraith* to recognize a limited exception to use of the intended loss figure. In *Galbraith*, the defendant was convicted and sentenced for his involvement in a scheme to obtain majority control of a public corporation, drive up the price of the stock and then sell to a European pension fund. *Galbraith*, 20 F.3d at 1056. Unknown to the defendant, the scheme was an undercover law enforcement operation, and the pension fund, the intended victim, did not exist. Id. Under these circumstances, where the intended victim was incapable of suffering loss because it was fictitious, the Tenth Circuit held that the sentence must be calculated using a probable loss figure of zero. *Id.* at 1059. This exception applies only where the "defendant could not have occasioned any loss even if the scheme had been completed." *Id.* (Footnote omitted).

Significantly, *Galbraith* relied on an earlier Tenth Circuit opinion in *United States v. Santiago*, 977 F.2d 517 (10th Cir.1992), in which an act of insurance fraud was thwarted by law enforcement intervention. Although the insurance company suffered no actual loss, the court nonetheless approved a loss figure of $4,800 based upon the "blue book" value of the car that the defendant had falsely reported as stolen. The *Santiago* court held that the district court had erred in applying an intended loss figure of $11,000 (the amount Santiago sought in his insurance claim) where the insurance company would not have paid more than the "blue book" value under any circumstances. This was so, the court noted, "because an intended loss under § 2F1.1 cannot exceed the loss a de-

fendant in fact could have occasioned if his or her fraud had been entirely successful." 977 F.2d at 524. But the court had no trouble concluding that a loss figure greater than zero was required even though the fraud was prevented by police efforts, and no loss actually occurred. See also *United States v. Agwu*, 5 F.3d 614, 615 (2d Cir.1993) (involving sale of forged securities to undercover Secret Service agent).

This is simply not a case in which the "defendant could not have occasioned any loss even if the scheme had been completed." *Galbraith*, 20 F.3d at 1059. Falcioni's plan failed to result in loss, not because his victim was a non-existent entity, but rather because Elwood notified law enforcement authorities. Had Elwood been corrupt, the probable result would have been loss to the government of $41,000. As the government points out, whenever law enforcement officials detect a fraud in progress, the possibility of success is dramatically reduced. Simply because the government's crime prevention efforts prove successful, however, does not mean that the "intended loss" is zero.

In addition, we do not believe that *United States v. Watkins*, upon which appellant also relies, requires remand. In that case, unlike the case here, the Sixth Circuit believed that "realistically the record suggests that [the defendant] could not have" caused all the loss with which she had been charged. *Watkins*, 994 F.2d at 1196. The *Watkins* court was principally concerned with the lack of evidence in the record to support the district judge's findings and with the possibility that the district court had made mathematical errors in calculating the potential loss. *Id.* at 1196 & n. 5. We are not concerned with these factors here.

█ Appellant argues further that we must remand because the district court did not make an explicit finding that Falcioni knew the extent of Thomas's tax liability, and such awareness is necessary in order to charge him with the $41,000 intended loss. The relevant guidelines and application notes do not appear to require the court to make such an explicit finding, and appellant has offered no authority establishing that an explicit finding is required. The district court

had ample evidence from which it could have concluded that Falcioni learned of the extent of the tax liability during the course of the scheme. The PSI stated, for example, that Falcioni asked Elwood to "get rid of" Thomas's tax liability, and Elwood gave Falcioni a document purporting to be a receipt for the full amount. Falcioni did not contest any of the PSI's factual assertions. Thus, we do not believe that the lack of an explicit finding regarding Falcioni's awareness requires resentencing.

Falcioni further contends that the district court erred to the extent that it believed that $41,000 represented the benefit to be received under § 2C1.1(b). He maintains that because he stood to gain only $3,500 as the middleman, an individualized assessment of his culpability requires that he be punished on the basis of this amount, rather than the $41,000 benefit that Thomas would have received. *United States v. Ellis*, 951 F.2d 580, 585 (4th Cir.), cert. denied, — U.S. —, 112 S.Ct. 3030, 120 L.Ed.2d 901 (1992). The government counters that the "benefit received" is "equal to the tax liability [the defendant] sought to eliminate," *United States v. Ziglin*, 964 F.2d 756, 758 (9th Cir. 1992), and that a basic principle of the guidelines is that in cases of "jointly undertaken criminal activity," the defendant's specific offense characteristics are determined by "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Rivera*, 971 F.2d 876, 892 (2d Cir.1992); *United States v. Tillem*, 906 F.2d 814, 829 (2d Cir. 1990).

Because we conclude that $41,000 represented the proper measure of intended loss, we need not consider whether it also represented the benefit to be received under § 2C1.1. As already noted, the relevant guideline explicitly requires the district court to enhance the offense level based upon *the greatest of* "the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense." Even if the district court had found that the appropriate measure of the "benefit received" was $3,500, as

appellant urges, it still would have had to calculate appellant's sentence based on the greater $41,000 intended loss figure. Therefore, any error in failing to make an "individualized assessment" of Falcioni's benefit was harmless.

We have considered all of appellant's arguments, including that a remand is necessary to allow the district court to clarify the basis for its decision, and they are without merit. The decision of the district court is therefore affirmed.