UNITED STATES COURT OF APPEALS

**Filed 6/10/96**

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

ROBERT LEE BOWMAN,

    Defendant - Appellant.

No. 95-5204
(D.C. No. 95-CR-19-C)
(W.D. Okl.)

ORDER AND JUDGMENT[*]

Before KELLY, BRISCOE, and LUCERO, Circuit Judges.

Robert Bowman appeals his convictions on multiple counts of wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343, 2. The sole issue raised on appeal is whether the evidence presented was sufficient to sustain the convictions. We affirm.

Bowman and his wife Susan Bowman were charged with nine counts of wire fraud and aiding and abetting. Specifically, the indictment charged Bowman with forming Insurance Dynamics of America (IDA) and recruiting persons to provide money to capitalize IDA in exchange for debentures purporting to guarantee returns varying from

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

11 to 12.5 percent; however, the indictment charged that the Bowmans used most of the investors' money to cover personal and other unrelated expenses.

A person commits wire fraud if, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [he] transmits or causes to be transmitted by means of wire [or] radio . . . communication in interstate . . . commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 28 U.S.C. § 1343. Thus, the essential elements of wire fraud are a scheme to defraud and use of interstate wire communications to facilitate the scheme. United States v. Galbraith, 20 F.3d 1054, 1056 (10th Cir.), cert. denied 115 S. Ct. 233 (1994). "[A] scheme to defraud is conduct intended or reasonably calculated to deceive persons of ordinary prudence or comprehension." United States v. Hanson, 41 F.3d 580, 583 (10th Cir. 1994).

On the other hand, to be liable as an aider and abettor under 18 U.S.C. § 2, the evidence must establish defendant associated himself with a criminal venture, defendant participated in the venture as something he wished to bring about, defendant sought by his actions to make the venture succeed, and proof established commission of the offense by someone and aiding and abetting by defendant. Hanson, 41 F.3d at 582.

Bowman generally contends the evidence presented was insufficient to support his convictions. Specifically, he argues the evidence does not establish he acted with

2

fraudulent intent but that he acted in good faith. The standard of review applicable to a sufficiency of evidence challenge is highly deferential to the prosecution; indeed, we have stated that an appellant challenging his conviction due to insufficiency of the evidence must overcome a "difficult standard" of review. United States v. Hoenscheidt, 7 F.3d 1528, 1530 (10th Cir. 1993). We recently explained the standard:

> In evaluating a challenge to the sufficiency of the evidence, "we review the record *de novo*, and ask only whether, taking the evidence--both direct and circumstantial, together with the reasonable inferences to be drawn therefrom--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. In order to conclude the evidence was insufficient, as a matter of law, to support a conviction, we must find that no reasonable juror could have reached the disputed verdict." [Citation omitted.]

United States v. Hicks, 1996 WL 268047, *7 (10th Cir. May 20, 1996) (quoting United States v. Owens, 70 F.3d 1118, 1126 (10th Cir. 1995)).

Bowman argues he ran an honest business that failed, and that the government failed to establish he had the intent to defraud. We have carefully reviewed the entire record in this case and we conclude a reasonable jury could have found that Bowman intended to defraud his investors. It is clear from the transcript that Bowman was the person primarily responsible for inducing the investors to part with their money; he contacted them, visited them, and encouraged them to purchase debentures to capitalize IDA. He represented to the investors that their money would be used to establish IDA, that he guaranteed a certain rate of return on their investments, and that IDA was a safe investment. Bowman told the investors their money was safer with him than in banks

3

because it would be invested in the assets of "other going corporations." The transcript also supports reasonable inferences that Bowman diverted a substantial amount of IDA's capital to personal use and that he misrepresented IDA's business pursuits to the investors, including misrepresentations that their monies were being invested and were growing. Some investors made additional investments following their receipt of an Investors Quarterly Newsletter which Bowman sent to them. The Newsletter misrepresented to investors that IDA was going forward and producing well. FBI Agent Dan Risner testified in some detail about the manner in which the investors' money was spent. He opined the Bowmans used up to 54 percent of IDA's capital for personal and other expenditures unrelated to IDA. Additionally, the transcript clearly indicates Bowman falsely represented IDA's financial stake in and ownership of various health care companies. Although the extent of these misrepresentations is unclear, Risner's testimony supports a reasonable inference that Bowman used most of the investors' money for purposes other than to capitalize IDA.

Bowman unpersuasively attempts to transmute the investors' understanding of risk into an insurmountable showing of his own good faith; his disclosure of general risk does not necessarily indicate he lacked fraudulent intent. The indictment charged him with diverting the investors' money to unrelated uses and Risner's testimony supported that charge. With respect to whether he diverted the investors' money, Bowman disputes Risner's testimony, as he did at trial through cross-examination and his own testimony,

and generally contests the government's interpretation of the evidence. In essence, Bowman simply urges us to favor his interpretation of the record.

The question is not whether Bowman's interpretation of the evidence is tenable but whether, viewed in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Jones, 44 F.3d 860, 864 (10th Cir. 1995). We must "accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." Hicks, 1996 WL 268047, *7 (quoting Owens, 70 F.3d at 1126). We believe a rational trier of fact could conclude beyond a reasonable doubt that Bowman committed wire fraud. Accordingly, we find the evidence presented was sufficient to support Bowman's convictions.

For the foregoing reasons, Bowman's convictions are AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge