**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHAEL C. PEACH,

    Defendant-Appellant.

No. 96-3233
(D.C. No. 95-CR-10052)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY, EBEL** and **KELLY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Michael C. Peach appeals from his convictions and sentences on two counts of possession with intent to distribute crack cocaine, two counts of using or carrying a firearm during and in relation to a drug trafficking offense, and one count of unlawful and wilful obstruction of commerce by robbery.

On December 18, 1994, Wichita Police Officer Patrick M. Chapman stopped the vehicle driven by Mr. Peach for making a lefthand turn without signaling. Officer Chapman then approached the driver's side of the vehicle and asked Mr. Peach for his driver's license. As Mr. Peach reached for his driver's license, Officer Chapman observed the tip of a plastic baggie between Mr. Peach's legs which Officer Chapman believed contained crack cocaine. When a second officer arrived on the scene, Officer Chapman asked Mr. Peach to exit his vehicle. When Mr. Peach did so, he left the plastic baggie on the driver's seat of the vehicle. The second office then placed Mr. Peach under arrest.

An inventory search of the vehicle revealed a loaded Titan Model 380 handgun underneath the driver's seat and a pager which repeatedly "went off" during the search. Analysis of the contents of the plastic baggie revealed it contained 1.41 grams of crack cocaine.

On February 7, 1995, two officers of the Wichita Police Department on routine patrol observed a vehicle driven by a black male traveling southbound on Broadway at a high rate of speed. The officers observed the vehicle's front windshield was cracked and decided to stop the vehicle.

As the officers exited their patrol car, the driver of the detained vehicle, Mr. Peach, got out of his vehicle. The officers told Mr. Peach to get back into his vehicle. However, Mr. Peach turned and ran from the scene. During the ensuing chase, the pursuing officer observed Mr. Peach place his right hand on what the officer believed to be the butt on a handgun and drop the weapon on the ground. When the officer finally tackled Mr. Peach, he observed Mr. Peach trying to stuff a plastic baggie into his mouth. The officers then retrieved the plastic baggie, which contained eight "rocks" of crack cocaine weighing 1.19 grams, and a loaded .9 mm. Ruger P 89 handgun. The officers also recovered a dark colored pager and $168 from Mr. Peach's person. An inventory search of the vehicle revealed a registration card indicating Mr. Peach had recently purchased the vehicle and a pink pager.

On April 10, 1995, a black male entered Jimmie's Diner at 3111 N. Rock Road, Wichita, Kansas, with a handgun and demanded money while holding a

hostage around the neck with the handgun jammed into her ribs. The robber obtained approximately $300 in cash and change from the cash register in a maroon bank bag. He then fled in a blue Ford Taurus.

Officers responding to the robbery call noticed a vehicle fitting the description of the robber's vehicle traveling westbound on 32nd Street and gave chase. The officers eventually stopped the vehicle and took both occupants of the vehicle to the scene of the robbery for identification. The hostage, an employee of Jimmie's Diner, identified Mr. Peach as the robber.

On the ground near where the vehicle stopped, officers found a Marksman BB gun pistol and brown pants turned inside out with $202 in cash in the pockets, which was separated by denomination. In the vehicle, officers found rolled coins and fifty wrapped $1 bills along with a maroon bank bag belonging to Jimmie's Diner.

On April 19, 1995, the grand jury returned a five-count indictment against Mr. Peach. Counts I and III charged Mr. Peach with possession with intent to distribute cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1) (1994) and 18 U.S.C. § 2 (1994), on December 18, 1994, and February 7, 1995,

respectively. Counts II and IV charged him with unlawfully carrying or using a firearm during and in relation to a drug trafficking offense, namely possession of crack cocaine with intent to distribute, in violation of 18 U.S.C. §§ 924(c) and 2 (1994), on December 18, 1994, and February 7, 1995, respectively. Count V charged him with unlawfully, knowingly and willfully obstructing, delaying, and affecting commerce and attempting to obstruct, delay, and affect commerce by robbing Jimmie's Diner on April 10, 1995, by means of actual and threatened violence, force, and fear of injury, in violation of 18 U.S.C. §§ 1951 and 2 (1994).

Prior to trial, the district court denied Mr. Peach's motion to dismiss Count V, but granted his motion to sever Count V from the remaining counts. On October 18, 1995, Mr. Peach proceeded to trial on Counts I through IV. A jury convicted him on all four counts on October 19, 1995.

On January 17, 1996, as a result of the Supreme Court's decision in *Bailey v. United States*, 116 S. Ct. 501 (1995), the district court granted Mr. Peach a new trial on Count II, using or carrying a firearm during and in relation to a drug trafficking offense. The district court denied Mr. Peach's motion for a new trial on Counts I, III, and IV. The court then sentenced Mr. Peach to thirty-six months

imprisonment on Counts I and III, to run concurrently, and sixty months imprisonment on Count IV, to run consecutively to his sentences for Counts I and III.

On March 19-20, 1996, Mr. Peach was retried on Count II and found guilty. On April 3, 1996, the district court denied Mr. Peach's renewed motion for acquittal.

On May 21, 1996, Mr. Peach was tried on Count V. The jury convicted him on May 22, 1996.

On June 17, 1996, the district court sentenced Mr. Peach to twenty years imprisonment on Count II and sixty-three months imprisonment on Count V, both sentences to run consecutively to his prior sentences.

On appeal, Mr. Peach contends: (1) in his first trial, the district court erred in allowing Detective Fettke to testify as an expert on drug dealers and regarding a conversation Detective Fettke had with him in December 1994; (2) the evidence was insufficient to sustain his convictions on Counts I and III; (3) the district court erred in failing to give a jury instruction on aiding and abetting as charged

in the indictment in Counts I through IV; and (4) the district court lacked jurisdiction to prosecute him on Count V.[1]

As a preliminary matter, we address the government's assertion we lack jurisdiction to consider Mr. Peach's claims related to his convictions on Counts I, III, and IV because his notice of appeal was untimely. The government's argument is wholly without merit. A notice of appeal must be filed within ten days of the entry of the judgment appealed from. Fed. R. App. P. 4(b). For the purposes of Fed. R. App. P. 4(b), a judgment is entered "when it is entered on the criminal docket." *Id.* Although the judgment on Counts I, III, and IV was filed January 30, 1996, it was entered on the criminal docket sheet on January 31, 1996. Therefore, Mr. Peach's February 12, 1996, filing of a notice of appeal was timely. *See* Fed. R. App. P. 26(a) ("The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, ... in which

---

[1] In his reply brief, Mr. Peach asserts for the first time the evidence was insufficient to convict him on Count V and that the district court erred in giving an aiding and abetting instruction on Count V. We will not address these issues, however, because issues raised for the first time in the reply brief are deemed waived and will not be considered. *See Codner v. United States*, 17 F.3d 1331, 1332 n.2 (10th Cir. 1994).

event the period runs until the end of the next day which is not one of the

aforementioned days.").[2]


# I.

Mr. Peach contends that at the October 1995 trial on Counts I-IV: (a) the

district court erred in allowing Detective Fettke to testify as an expert on crack

cocaine sales and differences between drug dealers and simple drug users, and (b)

the district court prejudiced his defense and denied him his Sixth Amendment

right to a fair trial by permitting Detective Fettke to testify regarding a

conversation Detective Fettke had with him in December 1994.


# a.

Mr. Peach contends the district court erred in allowing Detective Fettke to

testify as an expert witness. "The determination of whether expert testimony

should be admitted rests with the sound discretion of the [district] court." *United

States v. Esch*, 832 F.2d 531, 535 (10th Cir. 1987), *cert. denied*, 485 U.S. 908

(1988). Therefore, we defer to the district court and review its determination only

for abuse of that discretion. *Id*.

---

[2] This appeal was docketed as No. 96-3054 and dismissed for lack of finality on August 26, 1996, by a jurisdictional panel of this court.

At the first trial in October, 1995, Detective Fettke testified as an expert witness on crack cocaine sales and the differences between crack cocaine users, user-dealers, and dealers based on his training and experience in the sale of narcotics.[3]  Detective Fettke testified to his extensive training and experience in drug sales during his eleven years with the Wichita Police Department. Thereafter, he testified the "normal" crack cocaine user only possesses:  one $20 "rock" of crack cocaine, which weighs approximately 0.10 grams; a crack pipe; and a lighter or a torch to provide the high heat necessary to vaporize the cocaine. Detective Fettke testified users usually do not carry more than $20-$40 with them and usually do not carry firearms for protection.  He testified a user normally only carries firearms to be pawned or traded for cocaine.  Finally, Detective Fettke testified crack cocaine users usually do not have any money or any valuable possessions, because they spend all their money on and trade all their possessions for more cocaine.

---

[3]  Although the district court did not formally accept Detective Fettke as an expert witness, the court knew the prosecution offered him as an expert witness, heard him describe his qualifications and then allowed him to give his opinion testimony.  We therefore assume the court accepted Detective Fettke as an expert witness.  *See United States v. McDonald*, 933 F.2d 1519, 1522 n.2 (10th Cir.), *cert. denied*, 502 U.S. 897 (1991).

In regard to user-dealers, Detective Fettke testified user-dealers often carry firearms with them; occasionally have pagers to make them more accessible to their buyers; and normally do not carry their crack pipes and drug usage paraphernalia with them. He noted user-dealers usually have "some of the nicer things that go along with dealing cocaine."

The proper inquiry concerning expert testimony is whether the jury is able to understand the evidence without the specialized knowledge available from the testimony of the expert witness. *United States v. McDonald*, 933 F.2d at 1522. In this case, the basic facts were the amount of crack cocaine found in plastic baggies, 1.41 and 1.19 grams, coupled with the possession of loaded firearms, pagers, and over $100 in cash. Without understanding the drug trade and how a drug dealer works, a jury could not be expected to understand the significance of this evidence. *McDonald*, 933 F.2d at 1522. Detective Fettke provided the specialized knowledge needed to understand the evidence presented. Therefore, we hold the district court did not abuse its discretion in allowing Detective Fettke to testify as an expert witness.

**b.**

Mr. Peach asserts the district court prejudiced his defense and denied him his Sixth Amendment right to a fair trial by permitting Detective Fettke, over Mr. Peach's objections, to testify regarding a conversation Detective Fettke had with him in December 1994.

During the government's case-in-chief, the government called Detective Fettke to testify that Mr. Peach told him he "does not distribute or use crack cocaine." Detective Fettke's testimony was presented to refute Mr. Peach's defense that he was a simple user of cocaine and not a dealer. The district court found this testimony relevant and concluded its probative value was not outweighed by the prejudice to Mr. Peach. Immediately following Detective Fettke's testimony, the district court instructed the jury that the testimony could only be used for the purpose of determining whether Mr. Peach possessed the necessary intent to distribute crack cocaine and not for the purpose of whether Mr. Peach was engaged in an illegal transaction when the conversation took place.

"We review both the district court's determination of the relevancy of the evidence and its conclusion that the probative value of the evidence is not substantially outweighed by its prejudicial effect for an abuse of discretion." *United States v. Flanagan*, 34 F.3d 949, 952 (10th Cir. 1994).

Federal Rule of Evidence 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Mr. Peach did not dispute his possession of 1.41 and 1.19 grams of crack cocaine on December 18, 1994, and February 7, 1995, respectively.  Rather, his defense centered on his being a simple user of crack cocaine and not a distributor.  Therefore, Detective Fettke's testimony was relevant to Mr. Peach's intent to use or to distribute the crack cocaine in his possession.

Federal Rule of Evidence 403 provides relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  The evidence here was certainly damaging to Mr. Peach's defense:  it refuted his assertions that he was a simple user of crack cocaine and not a dealer, and it showed additional involvement with the police.  However, it did not rise to the level of unfair prejudice.  "[T]he unfair prejudice aspect of Rule 403 'cannot be equated with testimony which is simply unfavorable to a party.  It must be unfair in the sense that it would be misleading and not aid and assist the jury in making a material determination in the case.'"  *Flanagan*, 34 F.3d at 953 (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1549-50 (10th Cir. 1991)).

Accordingly, we hold the district court did not abuse its discretion in admitting Detective Fettke's testimony regarding the conversation he had with Mr. Peach in December 1994.

## II.

Mr. Peach contends there was insufficient evidence to support his convictions on Counts I and III for possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Mr. Peach asserts he is merely a user of cocaine, not a distributor.

To obtain a conviction under 21 U.S.C. § 841(a)(1) for possession with intent to distribute crack cocaine, the government must establish Mr. Peach (1) possessed crack cocaine; (2) knew he possessed crack cocaine; and (3) intended to distribute the crack cocaine. *See United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). Mr. Peach does not claim he did not knowingly possess crack cocaine. Mr. Peach challenges the sufficiency of the evidence to establish he intended to distribute the crack cocaine rather than use it personally.

We review the record for sufficiency of the evidence *de novo*. *Wilson*, 107 F.3d at 778. "'Evidence is sufficient to support a conviction if a reasonable jury

could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government.'" *Id.* (quoting *United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994)). "Rather than examining the evidence in 'bits and pieces,' we evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'" Wilson, 107 F.3d at 778 (quoting *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir.), *cert. denied*, 475 U.S. 1128 (1986)). Thus, we must affirm the conviction if the "collective inferences" from the totality of the evidence could have led a reasonable jury to find beyond a reasonable doubt that Mr. Peach intended to distribute the crack cocaine he possessed.

In reviewing the record, we hold there was sufficient evidence to establish Mr. Peach's intent to distribute the crack cocaine found in his possession on December 18, 1994, and February 7, 1995. The evidence demonstrated: Mr. Peach possessed 1.41 and 1.19 grams of crack cocaine on December 18, 1994, and February 7, 1995, respectively; he did not have with him any paraphernalia associated with drug use on either occasion; on February 7, 1995, he was carrying $168 in cash on his person; on both occasions, he possessed at least one pager; and on both occasions he possessed a loaded firearm. Considering the expert

-15-

testimony of Detective Fettke, evidence indicates intent to distribute crack cocaine.  Furthermore, this court has indicated the presence of firearms in connection with drugs, as with the two firearms in this case, may be probative evidence of an intent to distribute the drugs.  *See United States v. Hager*, 969 F.2d 883, 888 (10th Cir.), *cert. denied*, 506 U.S. 964 (1992).  Taken as a whole, the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Mr. Peach possessed crack cocaine with the intent to distribute.

## III.

Mr. Peach contends the district court erred in failing to give an aiding and abetting instruction on Counts I through IV.  Mr. Peach argues that in order for the jury to find guilt beyond a reasonable doubt all elements of the offenses charged must be given to the jury and, thus, failing to give an aiding and abetting instruction as charged in the indictment is *per se* reversible error, especially when the evidence presented at trial was insufficient to support the charges of aiding and abetting in the indictment.  Mr. Peach asserts the district court constructively amended the indictment by omitting the aiding and abetting charges from its reading of the indictment to the jury and from its jury instructions.[4]

---

[4]  From the record before us, we cannot discern whether the district court actually read the redacted indictment to the jury in addition to submitting a written copy to the jury in the jury instructions. However, the distinction is

Because Mr. Peach did not object to the district court's omitting the aiding and abetting instruction, we review only for plain error. Fed. R. Crim. P. 52(b). *See United States v. DeSantiago-Flores*, 107 F.3d 1472, 1479 (10th Cir. 1997). "Plain error is one that 'affects the defendant's right to a fair and impartial trial.'" *United States v. Galbraith*, 20 F.3d 1054, 1057 (10th Cir.) (quoting *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir.), *cert. denied*, 513 U.S. 878 (1994)), *cert. denied*, 513 U.S. 889 (1994). "It must have been both 'obvious and substantial.'" *Id*. at 1057 (quoting *Smith*, 13 F.3d at 1424).

In this case, the district court's omission of the aiding and abetting charges from the reading of the indictment to the jury and from the jury instructions ensured Mr. Peach received a fair trial as he was the only person charged in the indictment. Therefore, there can be no error in the district court's actions.

Next, Mr. Peach is correct that the jury must find a defendant guilty beyond a reasonable doubt on all elements of the offense charged. *See Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993) (a criminal conviction must rest upon a jury determination that the defendant is guilty beyond a reasonable doubt of each

---

irrelevant to our analysis. Our holding would be the same whether the district court read the redacted indictment to the jury, simply allowed the jury to have a copy thereof in the jury instructions, or both.

element of the offense charged).  However, aiding and abetting is a separate offense with its own elements under 18 U.S.C. § 2, and not an element of 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, or of 18 U.S.C. § 924(c)(1), using or carrying a firearm during and in relation to a drug trafficking offense.  *See Wilson*, 107 F.3d at 778 (discussing elements of 21 U.S.C. § 841(a)(1)); *United States v. Ruth*, 100 F.3d 111, 112-13 (10th Cir. 1996) (discussing elements of § 924(c)(1)); *United States v. Yost*, 24 F.3d 99, 104 (10th Cir. 1994) (discussing elements of 18 U.S.C. § 2).  Therefore, a court need not instruct a jury on aiding and abetting in order to instruct on all the elements of possession with intent to distribute or using or carrying a firearm during and in relation to a drug trafficking offense.  In fact, it would be error for the district court to allow an aiding and abetting instruction simply because the charge was included in the indictment where, as in this case, the evidence presented at trial does not support such a charge.  *See United States v. Martin*, 747 F.2d 1404, 1407-08 (11th Cir. 1984).

Finally, we review whether the district court constructively amended the indictment by omitting the aiding and abetting instruction.

> A constructive amendment occurs "if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment."  "The specific inquiry is whether the jury was permitted

to convict the defendant upon 'a set of facts distinctly different from that set forth in the indictment.'"

*Galbraith*, 20 F.3d at 1058 (quoting *Hunter v. New Mexico*, 916 F.2d 595, 599 (10th Cir. 1990), *cert. denied*, 500 U.S. 909 (1991)).

The key to constructive amendment is the defendant's conviction of an offense not charged in the indictment. Since it is impossible for the jury to have convicted Mr. Peach on a charge which was not even presented to them, the district court's omission of the aiding and abetting charges did not constructively amend the indictment. If anything, the district court's omissions amounted to a judgment of acquittal on the aiding and abetting charges.

## IV.

Mr. Peach contends the district court lacked jurisdiction to prosecute him under the Hobbs Act, 18 U.S.C. § 1951, for the April 10, 1995, robbery of Jimmie's Diner. Mr. Peach asserts the government "seized" his case from Kansas authorities in violation of his civil and constitutional rights. Finally, Mr. Peach

argues the government selectively prosecuted him.[5]  We review challenges to

jurisdiction *de novo*.  *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1479 (10th Cir. 1994).

"The Hobbs Act provides for the punishment of anyone who '*in any way or

degree* obstructs, delays, or affects commerce or the movement of any article or

commodity in commerce, by robbery or extortion or attempts or conspires so to

do.'"  *United States v. Zeigler*, 19 F.3d 486, 489 (10th Cir.) (quoting 18 U.S.C.

§ 1951(a)), *cert denied*, 513 U.S. 1003 (1994) (emphasis in original).  Under the

Act, commerce includes "'all commerce between any point in a State, ... and any

point outside thereof; ... and all other commerce over which the United States has

jurisdiction.'"  *Id.* (quoting 18 U.S.C. § 1951(b)(3)).

"Consistent with this broad statutory language, ... the 'jurisdictional

predicate of the Hobbs Act can be satisfied by a showing of "any *de minimis*

effect on commerce."'"  *United States v. Bolton*, 68 F.3d 396, 398 (10th Cir. 1995)

(quoting *Zeigler*, 19 F.3d at 489), *cert. denied*, 116 S. Ct. 966 (1996).  "In order

to establish the requisite *de minimis* effect on commerce, the government need

---

[5]  He also perfunctorily asserts the district court lacked personal jurisdiction over him.  Because he fails to develop this issue, we decline to review this claim. *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).

only produce evidence establishing that the assets of a business engaged in interstate commerce were depleted during the commission of the crime." *Id.*

During the trial on Count V, the Hobbs Act charge, the government presented evidence establishing that the robbery of Jimmie's Diner depleted the assets of business engaged in interstate commerce. Specifically, the government demonstrated the money taken in the robbery would have been used to purchase supplies for the diner from Wonder Hostess in St. Louis, Missouri; Milani Foods in Charlotte, North Carolina; Mid-Central/SYSCO in Kansas City, Missouri; and Meadow Gold in Dallas, Texas. This evidence is sufficient to demonstrate a *de minimis* effect on interstate commerce under the Hobbs Act. *See Bolton*, 68 F.3d at 399; *Zeigler*, 19 F.3d at 491-93. Therefore, we hold the district court had jurisdiction to prosecute Mr. Peach for violating the Hobbs Act.

Finally, Fed. R. Crim. P. 12(b)(1) requires a defendant to raise "objections based on defects in the institution of the prosecution" prior to trial. "A selective prosecution claim clearly qualifies as such an objection." *United States v. Bryant*, 5 F.3d 474, 476 (10th Cir. 1993). Furthermore, Fed. R. Crim. P. 12(f) presumes these objections are waived if they are not raised prior to trial; a presumption which can be overcome with a showing of cause. The record in this case

indicates Mr. Peach failed to raise selective prosecution prior to trial and he failed to show cause for this untimeliness. Accordingly, Mr. Peach's selective prosecution claim is waived.

For the foregoing reasons, we **AFFIRM** Mr. Peach's convictions and sentences on all counts.

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge