**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 29 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARIO ROMERO,

Defendant-Appellant.

No. 02-2265

(D.C. No. CR-01-735-LH)

(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **O'BRIEN** , and **TYMKOVICH** , Circuit Judges.

Following an undercover investigation, police arrested Mario Romero and charged him with conspiracy to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 846 ("Count I"), distribution of more than five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) ("Count II"), and use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b) ("Count III").

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The jury acquitted Romero on Counts II and III, but convicted him on the conspiracy charge. During and at the conclusion of his trial, Romero made three motions asking the district court to enter a judgment of acquittal, wherein he argued that the evidence presented by the prosecution was insufficient to support a conviction. The district court denied all three motions. Our jurisdiction arises pursuant to 28 U.S.C. § 1291. We affirm.

I.

We review *de novo* a district court's denial of a motion challenging the sufficiency of the evidence to support a conviction. *United States v. Almaraz*, 306 F.3d 1031, 1040 (10th Cir. 2002). In doing so we view the evidence and draw all inferences in the light most favorable to the government to determine "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Evans*, 318 F.3d 1011, 1018 (10th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Given this deference to the jury's weighing of the evidence and the credibility of witnesses, the following are the relevant facts of the case viewed most favorably to the government.

On November 21, 2000, undercover officer Miguel Mendez and a confidential informant drove to an auto shop where the informant introduced Mendez to Dorian Rios. Mendez told Rios he wanted to buy some crack cocaine.

Rios told Mendez he could supply the drugs, and proceeded to make a number of phone calls. The three men then left the shop and attempted to purchase crack at a nearby location, but returned to the shop unsuccessful. Shortly thereafter, Romero arrived. Rios asked him if he knew anyone who would sell them some crack. Romero said he would make some calls and mentioned the name "Sonya," a possible source of cocaine previously mentioned to Officer Mendez by one of the other co-conspirators.

The group then went to lunch, where Romero told them that he did not sell drugs because he was a family man, but that he did occasionally use them with Rios. Romero then asked Mendez how much an ounce of crack usually cost and Mendez replied that it could be anywhere from $600 to $1000. As the group left the restaurant, Romero told Mendez that he and Rios would get him the crack.

Mendez and the informant then left, promising to return to the shop later in the afternoon. When Mendez arrived, Rios appeared upset, and told Mendez he had not been able to find any crack. Meanwhile, Romero returned to the shop and started working on the transmission of a truck. Shortly thereafter he received a phone call, and Mendez testified that he heard Romero ask, "Do you have it?" and then say, "Okay, I will send them over there." Romero then hung up and told Mendez and Rios, "You guys go over there. She's got it."

Mendez refused to ride in Rios's truck, but instead gave Rios $850 and Rios went alone to buy the cocaine. Rios did not say exactly where he went or who sold him the drugs, but he returned a short time later with approximately 18.5 grams of crack. Mendez took the drugs and then gave Rios $50 for setting up the deal. He did not pay Romero for his role in the deal.

II.

To support a conviction of conspiracy to distribute cocaine, the government must show that (1) two or more persons, including the defendant, agreed to violate the law; (2) the defendant knew the essential objective of the conspiracy; (3) the defendant knowingly and voluntarily became part of the conspiracy; and (4) the alleged co-conspirators were interdependent. *United States v. Ivy*, 83 F.3d 1266, 1285 (10th Cir. 1996) (quotations and citations omitted).

A jury may reasonably conclude that two or more people agreed to commit a crime based on "the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994). The jury also "may presume a defendant is a knowing participant in the conspiracy when he or she acts in furtherance of the objective of the conspiracy." *United States v. Carter*, 130 F.3d 1432, 1440 (10th Cir. 1997). Interdependence is established

when "each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal." *Id*.

Evidence presented at trial showed that on the day of Romero's arrest he and Rios discussed how to find crack for Mendez, and Romero agreed to make phone calls to help further the transaction. Rios had tried repeatedly to get the drugs for Mendez, but was unsuccessful until Romero made and received at least two phone calls. Following these calls, Romero told Rios and Officer Mendez: "You guys go over there. She's got it." Rios left with $850 provided to him by Officer Mendez and returned a few minutes later with 18.5 grams of crack.

Viewing this evidence in the light most favorable to the government, we conclude that the jury could have reasonably found that Romero knowingly joined a conspiracy to sell cocaine and that the other participants in the conspiracy were dependent on him to complete the sale. Though the prosecution's case was based largely on the testimony of a single witness (Officer Mendez), and Romero presented evidence contradicting much of that witness's testimony, "we do not weigh conflicting evidence or consider witness credibility, as these duties are delegated exclusively to the jury." *Evans*, 318 F.3d at 1018. We therefore conclude that the evidence was sufficient to support Romero's conviction and the district court did not err in denying his motions for judgment of acquittal.

III.

In addition to urging us to reconsider conflicting evidence presented at trial, Romero argues that the jury, in acquitting him of Counts II and III, appears to have issued verdicts that are logically inconsistent with his conviction on Count I. That is, if the jury found that Romero was not guilty of using the telephone to facilitate drug trafficking, as alleged in Count III, he could not have been an integral part of the conspiracy as required for conviction on Count I, because most of his participation was in making and receiving phone calls.

As Romero acknowledges, however, it has long been settled that inconsistent verdicts do not provide the basis for reversal of a conviction. *See United States v. Powell*, 469 U.S. 57, 68-69 (1984); *United States v. Galbraith*, 20 F.3d 1054, 1058 (10th Cir. 1994). Romero insists that although *Powell* and *Galbraith* clearly hold that inconsistent verdicts do not compel a reversal of the conviction, this Court should consider a new standard where not guilty verdicts are viewed "as one factor contributing to the tenuousness of the guilty verdict."

But whether the inconsistent verdicts do indeed suggest that the guilty verdict is tenuous does not affect our review of the evidence supporting that verdict. *See Powell*, 469 U.S. at 64-65 (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932) ("'[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real

conclusions, but that does not show that they were not convinced of the defendant's guilt'").  The standard for our review remains as stated in *Evans*: Viewing the evidence in the light most favorable to the government, could "'any rational trier of fact . . . have found the essential elements of the crime beyond a reasonable doubt?'"  318 F.3d at 1018 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted).  As the *Powell* Court stated, "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. . . .  This review should be independent of the jury's determination that evidence on another count was insufficient."  469 U.S. at 67.

The jury's acquittal verdicts on Counts II and III therefore are irrelevant to our review of the evidence supporting the guilty verdict on Count I.  Because our independent review shows that the evidence at trial was sufficient to support that verdict, we affirm.

Entered for the Court:

TIMOTHY M. TYMKOVICH
Circuit Judge