UNITED STATES of America,
Plaintiff–Appellee,

v.

Sandra Patricia ROBINSON, aka:
Sandra Robinson, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Warren GILES, Defendant–Appellant.

Nos. 95–50577, 95–50580.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1996.

Decided Sept. 4, 1996.

Neison M. Marks, Deputy Federal Public Defender, Los Angeles, California; Philip Deitch, Los Angeles, California, for defendants-appellants.

Randall R. Lee, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: D.W. NELSON, T.G. NELSON, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Sandra Robinson and Warren Giles pled guilty to criminal charges filed as a result of a government counterfeit credit card sting operation. They claim on appeal that because the sting operation precluded the possibility of actual pecuniary loss, the court erred by enhancing their sentences under U.S.S.G. § 2F1.1 for the loss they hoped, expected and intended to cause. We disagree and affirm.

### FACTS AND PROCEDURAL HISTORY

In June of 1994, a confidential informant ("CI") advised the government that Robinson and Giles were manufacturing and selling counterfeit credit cards. In response, the government formulated a sting operation. On August 5, 1994, the CI met with Robinson and purchased seventeen counterfeit Discover credit cards for $950. Robinson said she wished to sell the CI 2,000 counterfeit cards. On August 16, 1994, Robinson told the CI that she and Giles were in the process of manufacturing the cards and demanded a $1,000 down payment. The CI gave Robinson $900 on August 17, 1994, in exchange for eight counterfeit cards. Over the next week and a half, the CI and Robinson discussed the timing of the counterfeit card production in telephone conversations taped by the government.

Giles and Robinson were arrested on August 29, 1994. A search of their property revealed various counterfeiting supplies and equipment including computer equipment used in counterfeiting; over 1,400 counterfeit credit cards in various stages of completion; 12,000 pieces of blank white plastic to be

used in counterfeit cards; and Discover card signature panels.

Robinson and Giles filed a sentencing memorandum with the district court arguing (1) a downward departure was warranted due to sentencing entrapment because they had neither the intent nor the resources to complete the sale of 2,000 counterfeit cards, and (2) there should be no enhancement for amount of loss because no amount of loss was possible. At the sentencing hearing, the district court declined to depart downward from the base offense level for sentencing entrapment. The court also disagreed with defendants' argument that there should be no enhancement for amount of loss because no loss was possible. The court held that for amount of loss enhancement, the government need only show intended loss, which need not be realistic. Assuming a potential loss per counterfeit credit card of $250, the court found the amount of loss for the 2,000 counterfeit cards to be $500,000. This resulted in a nine-level increase in the appellants' base offense level. The appellants timely appealed from this nine-level sentence enhancement.

### DISCUSSION

We review the district court's interpretation of the Sentencing Guidelines *de novo*. *United States v. Sablan*, 92 F.3d 865, 868–69 (9th Cir.1996). We review the district court's application of the Sentencing Guidelines to the facts for abuse of discretion. *United States v. Willett*, 90 F.3d 404, 406 (9th Cir.1996). We review the findings of fact underlying the sentencing decision for clear error. *United States v. Shaw*, 91 F.3d 86, 88–89 (9th Cir.1996).[1]

The base offense level for the crime of manufacturing and selling counterfeit credit cards is six. U.S.S.G. § 2F1.1(a) (Nov.1995). If the amount lost as a result of the crime exceeds $2,000, the offense level is increased in increments according to the amount lost.

U.S.S.G. § 2F1.1(b)(1). If there is no actual loss, the sentencing court should examine the loss the defendant intended to inflict. U.S.S.G. § 2F1.1 application note 7. The actual or intended loss need not be determined with precision; rather, the court need only make a reasonable estimate of the loss on the basis of the available information. U.S.S.G. § 2F1.1 application note 8.

The appellants argue the district court erred in enhancing their sentences under U.S.S.G. § 2F1.1 because there was never any possibility of loss occurring as a result of their sale of counterfeit cards to government agents. They rely on *United States v. Galbraith*, 20 F.3d 1054 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 233, 130 L.Ed.2d 157 (1994). In that case, Galbraith was convicted of wire fraud as part of a government sting operation, and the district court enhanced his sentence based on an intended loss of $80,000, the amount he requested as a "fee" for his services in executing the fraud. *Id.* at 1058–59. Galbraith argued on appeal the amount of loss should be zero because there was no possibility of loss to a victim. *Id.* at 1059. The Tenth Circuit agreed, reasoning that "[u]nder applicable authority, the loss defendant subjectively intended to cause is not controlling if he was incapable of inflicting that loss." *Id.* Because the offense arose out of a sting operation, there was no possibility of loss. *Id.*

The "applicable authority" the *Galbraith* court considered included *United States v. Sneed*, 814 F.Supp. 964 (D.Colo.1993), *aff'd*, 34 F.3d 1570 (10th Cir.1994), in which district court held the amount of loss to be zero for sentencing a defendant involved in a fraudulent scheme similar to that at issue in *Galbraith*. After surveying Tenth Circuit law, the *Sneed* court determined that

> use of "intended" loss as a measure of harm under section 2F1.1 is limited by a

1. These somewhat confusing standards are the result of decisions issued in the wake of *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). *Koon* held that *departures* from the Sentencing Guidelines should be reviewed for abuse of discretion. Koon also suggested in dicta that deference should be generally afforded to district courts in sentencing because of their special expertise. An *en banc* court has yet to consider the implications of *Koon* and the potential tension between the cited cases. However, that discussion is not relevant in this case because the standard of review does not make any difference in the outcome.

requirement that a sentencing court examine the circumstances objectively to see whether it was realistically possible for defendant to inflict the intended loss.... Where the scheme could not possibly have resulted in the intended loss under any circumstances, then "intended" loss should not be used.

*Id.* at 971. Both *Galbraith* and *Sneed* relied on *United States v. Santiago,* 977 F.2d 517 (10th Cir.1992), in which the defendant had been convicted of attempting to defraud his insurance company by falsely reporting his car stolen and submitting a claim for $11,000. *Id.* at 518–19. The most the insurance company would have paid was the "blue book" value of the car, or $4,800. *Id.* at 519. The Tenth Circuit concluded that the intended loss was $4800 because the loss subjectively intended by a defendant should not control "when the economic reality is that the probable or actual loss could not in any circumstances have exceeded a discernible lesser amount." *Id.* at 524.

*Galbraith, Sneed,* and *Santiago* all turned on the premise that the loss a defendant intended to inflict should not be used for sentencing under U.S.S.G. § 2F1.1 when he could not realistically have caused that loss. This Circuit has interpreted § 2F1.1 differently, holding that § 2F1.1 does not require the loss the defendant intended to inflict be realistically possible. In *United States v. Koenig,* 952 F.2d 267 (9th Cir.1991), the defendants were convicted of a conspiracy to use counterfeit automated teller machine (ATM) cards to withdraw funds. *Id.* at 270. The district court held that the "intended loss" was the appropriate measure for sentencing and rejected the defendants' argument that the term "intended loss" should be interpreted to mean "the probable loss which would have resulted from execution of the defendants' intended plan." *Id.* at 271. We affirmed, holding that "[i]f the district judge chooses to calculate the intended loss, there is no requirement mandating consideration of the 'probable loss' that would result from the intended plan." *Id.* We further held that "section 2F1.1 only requires a calculation of 'intended loss' and does not require a finding that the intentions were realistic." *Id.* at 271–72. We echoed these conclusions in

*United States v. Lorenzo,* 995 F.2d 1448 (9th Cir.), *cert. denied,* 510 U.S. 881, 114 S.Ct. 225, 126 L.Ed.2d 180 (1993), holding that "to base an upward adjustment on a 'loss,' the government need only show ... the amount of the intended loss," *Id.* at 1460, and that "the amount of loss that the coconspirators intended to inflict does not have to be realistic," *Id. Compare Sneed,* 814 F.Supp. at 970 ("[W]hen the sentencing commission uses the term 'intended' loss in the fraud guideline, I think it means only the objectively-measured loss which the conduct would probably have caused a victim in the natural course of events.").

Robinson and Giles argue *Koenig* and *Lorenzo* are inapplicable because they deal with determining the scope and meaning of the term "intended loss" and did not involve a government sting operation in which no loss was possible. We believe *Koenig* and *Lorenzo* are controlling precisely because they deal with the meaning of "intended loss." The result of these cases follows naturally from a plain meaning reading of application note 7 of U.S.S.G. § 2F1.1. This note provides "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1 application note 7.

 This Court applies the rules of statutory construction when interpreting the Sentencing Guidelines. *United States v. Powell,* 6 F.3d 611, 614 (9th Cir.1993). If the language of a statute is unambiguous, the plain meaning controls. *Powell v. Tucson Air Museum Found.,* 771 F.2d 1309, 1311 (9th Cir.1985). Commentary in the Sentencing Guidelines that interprets or explains a guideline is binding unless it violates the Constitution or a federal statute or is inconsistent with that guideline. *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). There is nothing in application note 7 that mandates the defendant be capable of inflicting the loss he intends.

 Robinson and Giles argue that allowing the amount of loss to be a consideration for sentencing defendants caught in a sting

operation gives government agents the power to structure the offense, the amount of loss, and ultimately the sentence the defendant will serve. However, defendants already have a remedy for this perceived danger. A defendant who is unduly pressured by government agents to commit a crime involving more loss than he originally intended is entitled to a downward departure for sentencing entrapment. *See United States v. Naranjo*, 52 F.3d 245, 249–51 (9th Cir.1995) (discussing sentencing entrapment); *United States v. Staufer*, 38 F.3d 1103, 1106–08 (9th Cir.1994) (same). The district court considered this contention and appropriately rejected it in this case.

Robinson and Giles also note that the drug guidelines exclude from the offense level computation quantities of drugs "the defendant establishes that he or she did not intend to provide *or was not reasonably capable of providing*." U.S.S.G. § 2D1.1 application note 12 (emphasis added). They argue this comment precludes punishing defendants for harm they could not inflict. Without commenting on whether it is appropriate to apply drug guidelines to counterfeiting cases, we can safely reject this argument on its face. The underscored language refers to whether the defendant had the resources to deliver the amount of drugs he intended to provide. *See, e.g., United States v. Monroe*, 943 F.2d 1007, 1019 (9th Cir.1991) (defendants "reasonably capable" of delivering amount of drugs intended because they had the resources to do so), *cert. denied*, 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). The district court's interpretation of *Koenig* and *Lorenzo* is in perfect accord with this reading of the drug guidelines: "[M]y reading of [*Koenig* and *Lorenzo* ] basically states that the amount of loss is controlled by what the defendant intended and *whether the defendant had the resources to complete the crime in the magnitude that is alleged.*" (emphasis added). Giles and Robinson clearly had the means and the potential resources to complete the crime of manufacturing and selling 2,000 counterfeit credit cards, as the district court properly found.

Cases from other circuits have dealt with similar issues. In *United States v. Khan*, 969 F.2d 218 (6th Cir.1992), a husband and wife schemed to defraud two insurance companies and the Social Security Administration (SSA) by submitting claims for the husband's death while he was still living. *Id.* at 219. The SSA denied the application for benefits because the husband was not yet eligible for them. *Id.* The Sixth Circuit held that the estimated amount of fraud loss on the social security claim was improperly included in the amount of loss for sentencing purposes because the SSA risked no loss as a result of the fraudulent application. *Id.* at 222. *See also United States v. Watkins*, 994 F.2d 1192, 1196 (6th Cir.1993) ("Regardless of the defendant's intent, the defendant may not be sentenced on the basis of harm that he or she was incapable of inflicting."). The *Khan* court concluded that sentencing enhancement is inappropriate where no loss is possible "for reasons entirely unrelated to the fraud or its discovery." *Khan*, 969 F.2d at 220. In this case, of course, no loss was possible for reasons *directly* related to the fraud. Two other circuits have distinguished the *Galbraith* line of cases on their facts, holding that unlike in the government sting operation in *Galbraith*, a loss was possible if the fraud had succeeded. *See United States v. Sheets*, 65 F.3d 752, 753–54 (8th Cir.1995) (false income tax returns filed to persuade IRS that victim was tardy taxpayer; fraud failed because victim contacted IRS); *United States v. Falcioni*, 45 F.3d 24, 25–27 (2d Cir.1995) (defendant bribed IRS agent to extinguish tax liability; fraud failed because agent reported bribe).

There is no reason why defendants caught as a result of a sting operation should be treated any differently than defendants caught participating in an ongoing fraud. As in general fraud cases, "[s]imply because the government's crime prevention efforts prove successful ... does not mean that the 'intended loss' is zero." *Falcioni*, 45 F.3d at 27.

Simply put, criminal defendants cannot expect sentencing leniency merely because they are caught in a government sting operation rather than an ongoing crime.

The opinion of the district court is AF-FIRMED.