**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Wilfred Page VAN LOBEN SELS,**
**Defendant–Appellee.**

**No. 98–10355.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1999.

Filed Dec. 30, 1999.

Donald W. Searles, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellant.

Christopher H. Wing, Sacramento, California, for the defendant-appellee.

Before: SNEED and PREGERSON, Circuit Judges, and CARTER,[1] District Judge.

CARTER, District Judge:

The United States appeals the sentence imposed by the district court following Wilfred Page Van Loben Sels' guilty plea to the misdemeanor charge of negligently discharging oily wastewater contaminated with benzene into the Los Angeles sanitary sewer system, in violation of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1317(d), 1319(c)(1)(A), and Los Angeles Municipal Code ("LAMC") § 64.30. The Government contends that the district court should have applied a six-level upward adjustment under Sentencing Guideline section 2Q1.2(b)(1)(A) because Van Loben Sels' offense was repetitive and resulted in environmental contamination.

The district court declined to apply section 2Q1.1(b)(1)(A) because the oily waste-water ultimately discharged as effluent into San Pedro Bay was rendered non-toxic after its subsequent treatment at the Terminal Island Treatment Plant ("Terminal Island"). We reverse and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

From 1987 through 1995, Van Loben Sels was the owner and chief executive officer of Gibson Environmental, Inc. ("Gibson"), a hazardous waste treatment, storage and disposal facility. Gibson specialized in the treatment and disposal of used oil and tank bottom wastes, and maintained facilities in Bakersfield and Redwood City, California. Because the storage capacity at the Bakersfield facility was limited to 20,000 barrels of wastewater and quickly reached maximum capacity, the facility was often forced to turn away business.

Van Loben Sels decided to expand Gibson's operations to a facility in the Wilmington neighborhood of Los Angeles. In September 1990, Van Loben Sels entered into an agreement with Wilmington Liquid Bulk Terminal ("WLBT") that allowed Gibson to discharge wastewater at WLBT's facility into the City of Los Angeles' sanitary sewer system, also known as Publicly Owned Treatment Works ("POTW"), under WLBT's sewer permit. The wastewater flowed from WLBT to the POTW at Terminal Island where it was treated and discharged into the San Pedro Bay. WLBT's industrial wastewater permit[2] provided that all discharges must be

---

1. Honorable David O. Carter, United States District Judge for the Central District of California, sitting by designation.

2. The foremost purpose of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. To that end, the CWA prohibits all discharge of pollutants into navigable waters except inasmuch as one of several enumerated statutory exceptions applies. *See* 33 U.S.C. § 1311(a). One such exception is where the polluter has been issued a National Pollution Discharge Elimination System ("NPDES") permit. *See* 33 U.S.C. § 1342. The effluent discharge standards or limitations specified in an NPDES permit define the scope of the authorized exception to the prohibition in § 1311(a), and authority to administer the NPDES permit system may be delegated to a state or regional agency where the state or regional regulatory scheme meets certain criteria. *See* 33 U.S.C.

in compliance with the terms and provisions of LAMC § 64.30.[3] Van Loben Sels admitted that from January 1991 through March 1993, Gibson did not have any treatment system in place that could remove benzene from its wastewater. During this 26–month period, Van Loben Sels was aware of and authorized the transportation of approximately one million gallons of wastewater per month from Gibson's Bakersfield facility to WLBT for discharge into the sewer. Van Loben Sels was aware that the wastewater transported from Gibson's Bakersfield facility contained hazardous waste comprised of benzene contained in concentrations greater than the regulatory limit of 0.5 parts per million ("ppm"), in violation of the statute. *See* 40 C.F.R. § 261.24. By not properly treating the wastewater, Gibson avoided approximately $2 million in treatment costs and secured a significant economic advantage over its competitors in the waste treatment business.

After Gibson's competitors complained, the Los Angeles Bureau of Sanitation began monitoring WLBT's and Gibson's discharges for the presence of benzene and other prohibited volatile organic compounds. Tests conducted on January 11 and January 25, 1993 showed Gibson's discharges contained a benzene concentration of 2.2 ppm and 3.3 ppm—over four and six times the regulatory limit of 0.5 ppm, respectively.

A 92–count superseding indictment issued on September 27, 1996, charged Van Loben Sels and two other individuals with, *inter alia*, transportation of hazardous waste without a manifest, in violation of 42 U.S.C. § 6982(d)(5); aiding and abetting, in violation of 18 U.S.C. § 2; negligently discharging, and causing to be discharged, wastewater containing hazardous levels of benzene, and other volatile organic compounds, in violation of 33 U.S.C. §§ 1319(c)(1)(A), 1317(d), and LAMC § 64.30; and conspiracy, in violation of 18 U.S.C. § 371.[4] On December 2, 1997, Van Loben Sels pled guilty to one count of negligently discharging oily wastewater contaminated with hazardous levels of benzene into the Los Angeles sewer system, in violation of 33 U.S.C. §§ 1319(c)(1)(A), and 1317(d), and LAMC § 64.30.

§ 1342(b); *see also Citizens for a Better Environment–California v. Union Oil Company of California*, 83 F.3d 1111, 1113–14 (9th Cir. 1996).

**3.** LAMC § 64.30(b)(1) provides, in pertinent part, that:

(a) Except as expressly allowed in an Industrial Wastewater Permit, no person shall discharge, permit the discharge, cause the discharge or contribute to the discharge of the following to the P.O.T.W., the storm drain systems of Waters of the State ... (1) ..., benzene, ...

Violating the LAMC is not, by itself, a federal offense. However, the CWA allows states to administer water pretreatment programs, *see* 33 U.S.C. § 1342(b), and violations of those regulations are treated as federal criminal offenses, *see* 33 U.S.C. § 1319(c)(2). Correspondingly, the CWA requires POTWs to create their own regulatory programs, *see* 40 C.F.R. § 403.5(c), and those regulations are deemed pretreatment standards under the CWA, *see* 40 C.F.R. § 403.5(d). *See United States v. Iverson*, 162 F.3d 1015, 1019 (9th Cir. 1998).

**4.** On February 12, 1997, the district court granted the defendants' motion to suppress state search warrants executed on Gibson's facilities in July 1993. Thereafter, all of Van Loben Sels' co-defendants pled guilty and received departures under Sentencing Guideline § 5K1.1 based upon their cooperation with the Government. Van Loben Sels' co-defendant, Lucas T. Dobrzanski, pled guilty to a one-count superseding information charging him with transportation of hazardous waste without a manifest, in violation of 42 U.S.C. § 6982(d)(5), and aiding and abetting, in violation of 18 U.S.C. § 2. Dobrzanski was sentenced on September 22, 1997, to fifteen months imprisonment and twelve months supervised release. *Id.* Co-defendant Thomas Pruitt pled guilty to conspiracy, in violation of 18 U.S.C. § 371 on March 31, 1998, and was sentenced to six months imprisonment. Co-defendant Dick Dahm pled guilty to negligently discharging, and causing to be discharged, wastewater containing hazardous levels of benzene, and other volatile organic compounds, in violation of 33 U.S.C. §§ 1319(c)(1)(A), 1317(d), and LAMC § 64.30. Dahm was also sentenced on March 31, 1998, to sixty months probation.

The district court conducted an evidentiary hearing prior to sentencing.[5] The district court originally issued a tentative finding that Sentencing Guideline section 2Q1.1(b)(1)(A) would apply because Gibson admitted to violating WLBT's discharge permit and environmental contamination had occurred. The district court also found that the totality of the circumstances allowed for a downward adjustment of two-levels, from level six to level four. The district court continued the evidentiary and sentencing hearing in order to receive supplemental briefing and evidence concerning two issues: whether the substance that was released was hazardous or toxic; and whether or not there was a discharge into the environment.

The district court found that: (1) it was undisputed that Van Loben Sels had continuously discharged benzene into the environment; (2) the term "environment" includes the POTW, which includes the City of Los Angeles' sanitary sewer system; (3) the Government failed to prove the total contribution of benzene to Terminal Island on any periodic basis, and the percentage of the total contribution that could be attributed to Gibson; and (4) the periodic tests taken by the City of Los Angeles during the entire period of the offense showed that no benzene had been discharged as effluent from Terminal Island. Accordingly, the district court rejected the government's position, and refused to apply the six-level upward adjustment under section 2Q1.1(b)(1)(A).

The district court thereupon recalculated Van Loben Sels' base offense level at 8, added a 4–level upward adjustment pursuant to section 2Q1.2(b)(4), because the offense involved the disposal of hazardous waste in violation of a permit, and subtracted 2–levels pursuant to section 3E1.1(a), for acceptance of responsibility. These adjustments resulted in a total offense level of 10. The district court, presented with a range of six to twelve months, sentenced Van Loben Sels to one-month community confinement, five-months home detention, waiver of the $25 fine, and restitution in the amount of $35,000, which became due immediately. The Government timely appeals.

## JURISDICTION

The district court exercised original jurisdiction of the case under 18 U.S.C. § 3231. We have jurisdiction of the government's appeal of Van Loben Sels' sentence pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291.

## DISCUSSION

At issue is whether the district court properly declined to upwardly adjust Van Loben Sels' base offense level pursuant to Sentencing Guideline section 2Q1.1(b)(1)(A). Van Loben Sels did not receive an upward adjustment because the district court assessed the toxicity of the wastewater at the time it left the Terminal Island Treatment Plant, rather than at the point it was initially discharged into the Los Angeles sanitary sewer system at the WLBT.

 The district court's interpretation and application of the Sentencing Guidelines is reviewed *de novo*. *See United States v. Merino*, 190 F.3d 956, 957 (9th Cir.1999). We review the district court's findings of fact underlying the sentencing decision for clear error. *See United States v. Robinson*, 94 F.3d 1325, 1326 (9th Cir. 1996).

---

**5.** The Presentence Sentence Report ("PSR") calculated Van Loben Sels' total offense level at 20 which, combined with a criminal history category of I, presented the district court with a sentencing range of 33 to 41 months. Pursuant to Sentencing Guideline section 5G1.1(a), however, Van Loben Sels could not be subjected to a sentence greater than the statutory maximum of twelve months. Accordingly, the PSR recommended that Van Loben Sels be sentenced to twelve months imprisonment and twelve months supervised release with special conditions, and pay restitution in the amount of $35,000, due immediately.

Sentencing Guideline section 2Q1.2(b)(1)(A) provides that "[i]f the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment, increase by 6 levels." Application note 5 to section 2Q1.2 provides further guidance on this point:

> Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation, a departure of up to two levels in either direction from the offense levels prescribed in these specific offense characteristics may be appropriate.

U.S.S.G. § 2Q1.2 application note 5 (1997).

 This Court applies the rules of statutory construction when interpreting the Sentencing Guidelines. *See Robinson,* 94 F.3d at 1328. If the language of a statute is unambiguous, the plain meaning controls. *Id.* Correspondingly, commentary in the Sentencing Guidelines that interprets or explains a guideline is binding unless it violates the Constitution or a federal statute, or is inconsistent with that guideline. *See id.* (*citing Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913 (1993)).

The only previously published case from this circuit interpreting and applying section 2Q1.2(b)(1)(A) is *United States v. Ferrin,* 994 F.2d 658 (9th Cir.1993). In *Ferrin,* the defendant was the civilian supervisor of seven hazardous waste handlers at a naval station, and instructed his employees to treat a hazardous substance by mixing the substance with another chemical. When the mixture did not react as the defendant planned, he directed his

staff to pour the chemicals into a kitty litter-like absorbent and dump the contents into the municipal dumpster outside the facility. Due to an ongoing investigation of the defendant, however, authorities witnessed the dumping and initiated a cleanup before the waste left the dumpster and contaminated the environment. *See id.* at 660.

In *Ferrin,* we explained that because offenses covered by Guideline section 2Q1.2 may or may not result in de facto contamination, the language of Application Note 5 requires a showing that some amount of hazardous substance in fact contaminated the environment to justify an offense level increase under subsection (b)(1). *See id.* at 663–64. Although we declined to increase Ferrin's offense level based on subsection (b)(1) because there was no actual contamination of the environment due to the fortuitous intervention of the authorities, we nevertheless stated that in most cases reasonable inferences from available evidence will suffice to support a conclusion that the illegal acts resulted in contamination. *See id.*

In the present case, Van Loben Sels' superseding information expressly states that the City of Los Angeles had adopted local pretreatment standards prohibiting the discharge of benzene and other volatile organic compounds to its POTWs. In essence, these local pretreatment standards applied to Gibson's wastewater discharges *from* the point source at WLBT on its path *to* the final treatment stage at Terminal Island.

Moreover, Van Loben Sels' plea agreement states that from August 1991 through March 1993, he was aware of and authorized the transportation of truckloads totaling one million gallons per month of untreated wastewater containing benzene from Gibson's Bakersfield facility to WLBT for discharge into the Los Angeles sanitary sewer system. The district court further found that Gibson had continuously discharged benzene into the environment,

which included the City of Los Angeles' sanitary sewer system, by discharging its untreated wastewater at the WLBT POTW collection pipes/connection point. Sentencing Guideline subsection (b)(1)(A) "actually specifies that the discharge, release or emission be 'into the environment.'" *Ferrin*, 994 F.2d at 658.

 The record here supports the district court's finding that hazardous material had been continuously discharged into the environment. This is the appropriate predicate for upward adjustment under subsection (b)(1), see *Ferrin* 994 F.2d at 664, and thus, it is reasonable to infer from that evidence that Gibson's illegal acts resulted in contamination, necessitating application of section 2Q1.2(b)(1)(A), see *id.* The district court's refusal to apply subsection (b)(1) on the ground that the Government failed to prove that the effluent from Terminal Island contained hazardous levels of benzene does not control the determination whether the adjustment under section 2Q1.2(b)(1)(A) is applicable. We conclude that the district court's refusal to apply such an adjustment is clearly erroneous in light of its finding that Gibson had continuously discharged benzene into the environment. *See Ferrin*, 994 F.2d at 663. Accordingly, Van Loben Sels' offense level should have been upwardly adjusted six levels, while empowering the district court with the discretion to depart two levels in either direction "[d]epending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation." U.S.S.G. § 2Q1.2 application note 5.

Other reasons support an upward adjustment for Van Loben Sels. It would be unfair to require the public to absorb any additional cleanup costs attributable to unregulated increases in discharged wastes to either a publicly funded treatment facility or directly into the environment. In addition, without punishment, Gibson's competitors may receive the message that this is acceptable conduct in order to remain economically competitive.

## CONCLUSION

The decision of the district court is **RE-VERSED** and **REMANDED** for the limited purpose of **RESENTENCING** pursuant to Sentencing Guidelines section 2Q1.2(b)(1)(A).·