**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

MARCIA ANN GOODBEAR,
        *Defendant-Appellant.*

No. 10-30381

D.C. No.
1:10-cr-00034-
RFC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Chief District Judge, Presiding

Argued and Submitted
December 7, 2011—Seattle, Washington

Filed April 13, 2012

Before: M. Margaret McKeown and Richard C. Tallman,
Circuit Judges, and Barry T. Moskowitz, District Judge.*

Opinion by Judge Tallman

---

*The Honorable Barry T. Moskowitz, United States District Judge for
the Southern District of California, sitting by designation.

## COUNSEL

L. Sanford Selvey II, Selvey Law Firm, L.L.C., Billings, Montana, for defendant-appellant Marcia Ann Goodbear.

Michael W. Cotter, United States Attorney, Lori Harper Suek, Assistant United States Attorney, Michael S. Shin, Assistant United States Attorney, United States Attorney's Office, Billings, Montana, for plaintiff-appellee United States of America.

## OPINION

TALLMAN, Circuit Judge:

We examine the reasonable foreseeability of criminal conduct arising from the tragic death of a young girl in Indian country in fashioning an appropriate sentence for misprision of felony. Defendant-Appellant Marcia Ann Goodbear ("Goodbear") appeals her sentence of 37 months in custody, three years of supervised release, and $12,763.66 in restitution, imposed following her guilty plea to assault resulting in substantial bodily injury, 18 U.S.C. §§ 1153(a) and 113(a)(7), and misprision of felony, 18 U.S.C. § 4.[1] We consider: (1) whether the four-level increase for use of a dangerous weapon under USSG § 2A2.2(b)(2)(B)[2] was reasonable; (2) as an issue of first impression, whether use of a minor can be attributed to another for the purposes of applying an enhancement pursuant to USSG § 3B1.4 for a misprision of felony offense and, if so, whether a two-level adjustment under § 3B1.4 for using a minor to assist in avoiding detection of, or apprehension for, the offense was reasonable in this case; and (3) whether Goodbear's 37-month sentence was reasonable. We

[1]In relevant part, the crime of misprision of felony applies to an individual who "having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States." 18 U.S.C. § 4.

[2]All references to the Sentencing Guidelines are to the 2010 United States Sentencing Commission Guidelines Manual ("Sentencing Guidelines," "Guidelines," or "USSG").

have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, vacate the sentence, and remand for resentencing.

# I

## A

On August 28, 2008, Lyrik Goodbear ("Lyrik"), Adrian Goodbear's six- year-old daughter and Goodbear's stepdaughter, was brought to the Indian Health Service Clinic ("IHS") in Lame Deer, on the Northern Cheyenne Indian Reservation in southeastern Montana. Lyrik was unconscious, not breathing, appeared to be brain dead, and had bruises all over her body. Upon examining Lyrik, IHS determined that her injuries were the result of physical abuse. IHS notified the Bureau of Indian Affairs Law Enforcement ("BIA Tribal Police"). Lyrik was flown to Billings, Montana, for further treatment at St. Vincent Medical Center ("St. Vincent's"). Goodbear accompanied Lyrik on the flight.

A doctor at IHS informed the BIA Tribal Police that Lyrik was brought to the reservation emergency room by her father, Adrian Goodbear, and that he had informed the emergency room staff that Lyrik had fallen from a tree. While undergoing medical treatment at St. Vincent's, the medical staff there also determined that Lyrik's injuries did not appear to be the result of accidental trauma.

Lyrik had suffered extensive injuries to her head, back, abdomen, and legs and the staff at St. Vincent's determined that Lyrik did not have brain activity. She was flown to Denver Children's Hospital in Denver, Colorado ("Children's Hospital") for further care. There, medical personnel confirmed that Lyrik suffered from multiple injuries, including a lacerated liver, lacerated spleen, and subdural hematoma. The staff at Children's Hospital also agreed that Lyrik's injuries were caused by non-accidental trauma. On August 30, 2008,

Lyrik was pronounced dead after tests confirmed that she still did not have brain activity.

An autopsy was conducted on September 2, 2008. The coroner determined that Lyrik died from blunt force trauma to the head and abdomen consistent with having been violently beaten and kicked. The autopsy further revealed multiple contusions and abrasions on her body's surface, along with a "right acute subdural hematoma."

S.G.[3], Adrian Goodbear's two-year-old daughter and Goodbear's step-daughter, was also injured on August 28, 2008. Goodbear later admitted to authorities that she hit S.G. on the back of the head with an open hand after Adrian Goodbear assaulted Lyrik, but before they had taken Lyrik to the hospital. As a result of Goodbear striking S.G., the child flew forward, hit a wall, fell to the floor, and suffered a swollen bruise above her left eye. A doctor told investigators that after reviewing photographs of S.G.'s injuries, he would have likely testified that the injury to her left eye was "substantial" because of the temporary disfigurement and swelling.

Agents of the Federal Bureau of Investigation ("FBI") and the BIA Tribal Police interviewed Adrian Goodbear, Goodbear, and K.H.[4], Goodbear's teenage son from a previous marriage, who lived with her and Adrian Goodbear.

Adrian Goodbear initially told investigators that he found Lyrik unconscious at the base of a tree, that she did not have any visible bruises when he brought her to IHS, and that he tried to resuscitate Lyrik by performing CPR. When Adrian Goodbear was confronted with the inconsistencies between his statements and the medical findings regarding Lyrik's injuries, he requested an attorney.

---

[3]Because the victim is a minor, we refer to her by her initials.

[4]Because K.H. is also a minor, we similarly refer to him by his initials.

K.H., Goodbear's thirteen-year-old son, was also interviewed. K.H. also initially told investigators that Lyrik had fallen from a tree. At a subsequent interview, K.H. changed his story and admitted to investigators that he saw Adrian Goodbear strike Lyrik with a belt and heard Lyrik screaming inside the family mobile home. K.H. further stated that he witnessed Adrian Goodbear and Goodbear attempt to resuscitate Lyrik, and that Adrian Goodbear told him to falsely tell investigators that Lyrik had fallen from a tree.

On August 29, 2008—one day before Lyrik was pronounced dead—Goodbear, while at St. Vincent's in Billings, was interviewed regarding Lyrik's injuries. Goodbear told an agent that Lyrik had fallen from a tree and that Adrian Goodbear had found her. Goodbear further informed the agent that she and her husband attempted to administer CPR to Lyrik before bringing her to IHS.

That afternoon, investigators again interviewed Goodbear at her home. Goodbear then changed her story and told them that Adrian was angry with Lyrik, brought her into the bedroom of their mobile home, and closed the door. She then heard Adrian Goodbear hit Lyrik for approximately twenty minutes. During that time, Lyrik was crying and screaming. Goodbear stood by and did nothing to stop the assault. After approximately twenty minutes, Lyrik became silent. Goodbear stated that approximately thirty minutes later, Adrian opened the door, asked Goodbear to come into the bedroom, and admitted that he kicked and struck Lyrik with his hands. Goodbear told investigators that she and Adrian attempted to resuscitate Lyrik for approximately thirty minutes. Goodbear encouraged Adrian to bring Lyrik to the hospital, but Adrian refused because he believed he would go to jail. They continued to attempt to resuscitate Lyrik until Goodbear's father convinced them to take her to a hospital.

On February 18, 2010, Adrian Goodbear pled guilty to Second Degree Murder, for which he received a sentence of life imprisonment.

On February 19, 2010, following her arrest, Goodbear provided a statement to authorities in which she admitted that she concealed the true cause of her stepdaughter's injuries from treating medical personnel and that Adrian Goodbear had, in fact, severely beaten Lyrik. Goodbear, who was pregnant at the time of the incident, further told investigators that she did not disclose the truth because she was afraid of Adrian Goodbear.

At the hearing on Goodbear's motion to change her plea, Goodbear pled guilty to misprision of felony as to Adrian Goodbear's assault on Lyrik and her own assault on S.G. Goodbear admitted she hit S.G. in an alleged effort to prevent her from entering the room where Adrian was hitting Lyrik. She expressed remorse for injuring S.G. and admitted that S.G. suffered substantial bodily injury as a result of her assault.

**B**

At sentencing, Goodbear requested a downward departure from the lower-end of the Guideline calculations. Dr. Bruce Chessen, a psychologist, testified on her behalf. Dr. Chessen, who met with Goodbear in May 2010 at defense counsel's request, diagnosed her with dysthymic disorder, generalized anxiety disorder, posttraumatic stress disorder, physical abuse victim, and mixed personality disorder. Dr. Chessen also opined that Goodbear was victimized in her relationship with Adrian Goodbear. He suggested that Goodbear was unable to intervene and stop Adrian Goodbear from hurting Lyrik because she was both afraid of being injured herself and worried that Adrian would hurt her unborn child. Dr. Chessen also concluded Goodbear was unable to intervene because of Battered Woman's Syndrome, and opined that as a result, she was unable to stop Adrian Goodbear from injuring Lyrik.

On December 16, 2010, Goodbear was sentenced to a prison term of 37 months, which consisted of ten months for

the assault and 37 months for misprision of felony, with both sentences to run concurrently. In addition, Goodbear was sentenced to three years of supervised release and was ordered to pay restitution in the amount of $12,763.66, to be reimbursed to Montana Medicaid for the care of S.G.

In determining the sentence, the district court considered the 18 U.S.C. § 3553(a) factors and the advisory Guideline range for misprision by calculating specific offense characteristics, victim related adjustments, and a role in the offense adjustment for the underlying crime committed by Adrian Goodbear.[5] The district court acknowledged that the Guidelines were just one of the factors to be considered. Specifically, because Goodbear pled guilty to misprision of felony, the court determined that under USSG § 2X4.1—the base offense level for misprision of felony, 18 U.S.C. § 4—the offense should be "9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19." USSG § 2X4.1(a). The district court determined that the "underlying offense" was the assault on Lyrik by Adrian Goodbear, in violation of 18 U.S.C. § 113(a)(6), for which the Guideline provides for a base offense level of 14. USSG § 2A2.2(a).

The district court also imposed numerous enhancements, two of which now serve as the subject of this appeal. First, the court held that a belt used by Adrian Goodbear to strike Lyrik could be regarded as a dangerous weapon in this case because "[i]t was an instrument utilized to inflict bodily injury,"

---

[5]The Commentary to USSG § 1B1.3 states that "[i]n the case of . . . misprision . . . the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." USSG § 1B1.3, cmt. n.10; *see also United States v. Robinson*, 94 F.3d 1325, 1328 (9th Cir. 1996) ("Commentary in the Sentencing Guidelines that interprets or explains a guideline is binding unless it violates the Constitution or a federal statute or is inconsistent with that guideline." (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993))).

allowing for a four-level increase under § 2A2.2(b)(2)(B). Second, the district court imposed a two-level increase under § 3B1.4 for use of a minor, finding the adjustment appropriate because it was "reasonable to conclude" that Goodbear "knew or should have known" that Adrian Goodbear told K.H. to lie about Lyrik's alleged fall from a tree. USSG § 1B1.3, cmt. n.10 ("In the case of . . . misprision . . . the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was *known, or reasonably should have been known*, by the defendant." (emphasis added)).

In addition to discussing the Guidelines, Chief Judge Richard F. Cebull explained:

> The thing that stood out from the first time I learned about this case was the fact that this defendant did nothing. She stood. She was there, present, while the girl was being beat to death for 20 minutes. Then there was silence in the room for 30 minutes. All that time, the defendant did nothing. And then rather than, during that period of time, call the police, go next door, go for help, take [S.G.], hug her, get her out of there, she, this defendant, assault[ed] [S.G.].
>
> Then after there was silence for 30 minutes, there was another 30 minutes. This defendant and Adrian Goodbear sat there with that lifeless little girl and allegedly attempted resuscitation. Who knows if that little girl would have survived had she been taken for immediate care, which was minutes away at Lame Deer. Who knows if she would have survived after this beating had she been taken to a medical facility rather than waiting for a whole hour.

The court also stated that it was "aware of the nature and circumstances of [the] offense" and Goodbear's "history and

characteristics." The court, however, had "no sympathy at all" for Goodbear because the consequences of her inactions and Adrian Goodbear's actions "far outweigh[ed] any such consideration." Thus, in light of these facts and that the sentence imposed "must reflect the seriousness of the offense, promote respect for the law, and provide just punishment," as well as "afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide her with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," the court imposed a 37-month sentence.

## II

We review "the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Guidelines to the facts for abuse of discretion, and the district court's factual findings for clear error." *United States v. Loew*, 593 F.3d 1136, 1139 (9th Cir. 2010) (quoting *United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008)). "Although the Guidelines are only advisory, a material error in calculating the sentencing range is grounds for resentencing." *Id.* (citation omitted).

## A

We consider whether the four-level increase for use of a dangerous weapon under USSG § 2A2.2(b)(2)(B) was an abuse of discretion. Application Note 1(D) to § 1B1.1 defines "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury; or . . . an object that is not an instrument capable of inflicting death or serious bodily injury but . . . closely resembles such an instrument." The severity of the injury is covered by a separate offense characteristic. USSG § 2A2.2(b)(3).[6]

---

[6]The court imposed a seven-level enhancement by applying § 2A2.2(b)(3)(C).

**[1]** We have held that "an upward adjustment under § 2A2.2(b)(2)(B) is authorized only when a defendant used an instrument capable of causing serious bodily injury with the intent to injure his victim," *United States v. Dayea*, 32 F.3d 1377, 1380 (9th Cir. 1994), and that a belt can be such an instrument. Specifically, in *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994), we expressly held, in considering a sufficiency of the evidence argument, that "as a matter of law, a . . . belt can be [a] dangerous weapon[ ]," and stated that the "determination whether an object constitutes a 'dangerous weapon' turns not on the object's latent capability alone, but also on the manner in which the object was used." *Id.* (citation omitted) (holding that a belt and shoe that a mother used to severely beat her two-year-old son were dangerous weapons because of the manner in which they were used).

**[2]** Goodbear fails to distinguish *Riggins* from the case presently before us. There is no dispute that Adrian Goodbear was seen striking Lyrik with a belt. Consequently, the district court did not clearly err in finding that Adrian Goodbear "used an instrument capable of causing serious bodily injury." *See Dayea*, 32 F.3d at 1380. Goodbear's argument that Adrian did not intend to injure Lyrik is belied by Lyrik's death.[7] Since both requirements under *Dayea* are met, the district court did not abuse its discretion in imposing the sentencing enhancement. We therefore hold that the district court properly applied the four-level enhancement pursuant to USSG § 2A2.2(b)(2)(B) because the belt used by Adrian Goodbear to beat Lyrik was employed as a "dangerous weapon."

## B

**[3]** We consider as an issue of first impression whether, for purposes of applying a § 3B1.4 enhancement, the use of a

---

[7]Goodbear's "objection" to the supplemental excerpts of record—pictures documenting the extent of Lyrik's injuries—is denied as moot.

minor can be attributed to another for a misprision of felony offense.[8]

Goodbear argues that the district court erred in applying a two-level enhancement directed by § 3B1.4 because the record does not suggest that there was an "affirmative act by [her] to direct, command, encourage, intimidate, counsel, train, procure, recruit or solicit a minor in this case." Specifically, she disputes the district court's application of a two-level enhancement under § 3B1.4—for using a minor to assist in avoiding detection of or apprehension for the offense—because she disagrees with the district court's finding that she knew or should have known that Adrian Goodbear would use K.H. to help conceal the murder by instructing K.H. to lie about how Lyrik incurred her injuries. This position fails to analyze the applicability of the § 3B1.4 enhancement in the context of a misprision offense.

**[4]** We begin with the rules of statutory construction to determine if the district court erred in imposing the enhancement. *See Robinson*, 94 F.3d at 1328 ("This Court applies the rules of statutory construction when interpreting the Sentencing Guidelines." (citation omitted)). We first look to the plain meaning of the words used. *See id.* (applying the rule of statutory construction to interpret the Guidelines and stating that "[i]f the language of a statute is unambiguous, the plain meaning controls" (citing *Powell v. Tucson Air Museum Found.*, 771 F.2d 1309, 1311 (9th Cir. 1985))). Whether the two-level

---

[8]Neither Goodbear nor the government cite to cases on point from our circuit or sister circuits to support their argument. Goodbear cites to *United States v. Pojilenko*, 416 F.3d 243, 248 (3rd Cir. 2005), to argue that "the enhancement under § 3B1.4 *cannot* be attributed to a defendant based on the conduct of a co-conspirator unless the defendant was directly involved with the 'use' of the minor." (emphasis in original). *Pojilenko*, however, is not a misprision of felony case and is therefore inapplicable here. *United States v. McClain*, 252 F.3d 1279 (11th Cir. 2001), another case upon which Goodbear relies, is also not a misprision case and as a result, is similarly inapplicable.

enhancement under § 3B1.4 is appropriate here is driven by the plain language of § 2X4.1 and its commentary. *See id.*

**[5]** Because Goodbear pled guilty to misprision of felony, § 2X4.1 directs us to look to the underlying offense—the assault and murder of Lyrik. *See* USSG § 2X4.1, cmt. n.1 ("'Underlying offense' means the offense as to which the defendant is convicted of committing the misprision."). The Guidelines and their commentary therefore instruct the court to determine the offense level for the underlying offense exactly as it would have had the defendant been convicted of that offense, and from there, to apply the misprision guideline provision.[9] *See id.* § 2X4.1(a) ("Base Offense Level: 9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19.").

**[6]** Key to our analysis, however, is that Application Note 1 to § 2X4.1 directs the court to "[a]pply the base offense level plus any applicable specific offense characteristics that were *known, or reasonably should have been known*, by the defendant." USSG § 2X4.1 cmt. n.1 (emphasis added). The district court found that it was reasonable to conclude that Goodbear knew or should have known that Adrian Goodbear told K.H. to lie—Goodbear herself actively assisted in helping

---

[9]Under § 3B1.4, a two-level enhancement for use of a minor to commit a crime is appropriate "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." *Id.* According to the commentary, " '[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id.* at cmt. n.1; *see Robinson*, 94 F.3d at 1328 ("Commentary in the Sentencing Guidelines that interprets or explains a guideline is binding unless it violates the Constitution or a federal statute or is inconsistent with that guideline."). The record establishes that Adrian Goodbear instructed K.H. to lie to the authorities about the cause of Lyrik's injuries. Consequently, an enhancement under § 3B1.4 would have been appropriate for Adrian Goodbear. Under § 2X4.1, the enhancement is similarly applicable to Goodbear if the use of the minor by Adrian Goodbear was reasonably foreseeable to her. *See* USSG §§ 2X4.1, 3B1.4.

Adrian Goodbear conceal the murder by maintaining the same false story of an accidental fall from a tree to attending medical personnel and both Goodbear and K.H. admitted that Adrian Goodbear instructed each of them to lie. The district court therefore did not clearly err in finding that Goodbear knew, or it was reasonable to assume that she should have known, that Adrian Goodbear would use K.H. to lie to authorities, as he instructed Goodbear to tell the same lie. There was no abuse of discretion in adding the two-level enhancement under § 3B1.4 because it was reasonably foreseeable to Goodbear that Adrian would use K.H., a minor, to avoid being held responsible for Lyrik's murder.

## C

[7] Goodbear argues that her 37-month sentence was unreasonable under 18 U.S.C. § 3553(a), but premises her argument on the impropriety of the sentencing enhancements. Because both enhancements were proper, we reject the basis of her claim. However, apparently overlooked by everyone was the fact that Goodbear's 37-month sentence for the misprision of felony offense exceeded the statutory maximum in 18 U.S.C. § 4, which states that a defendant who is guilty of a misprision of felony offense "shall be . . . imprisoned not more than three years." 18 U.S.C. § 4. The judgment specifically attributes 37 months to the misprision of felony count, and the district court explicitly stated at the sentencing hearing that the sentences were to run concurrently.[10] Accordingly, we vacate Goodbear's sentence in part because the district court was required to set the sentence for the misprision of felony offense at no more than 3 years (36 months).

---

[10]The court stated: "pursuant to 18 U.S.C. [§ ] 3553(a), and after considering the U.S. Sentencing Guidelines and policy statements, it is the judgment of the Court that the defendant, Marcia Ann Goodbear, is hereby committed to the custody of the U.S. Bureau of Prisons for a term of 37 months. This term consists of ten months for Count II and 37 months for Count III, with both counts to run concurrently."

Nor did either party alert the court to another error that may have occurred in calculating the combined offense level under USSG § 3D1.4. The district court properly assigned one unit to the misprision of felony conviction under count three of the indictment and zero units to the assault resulting in substantial bodily injury conviction under count two, but improperly added one level to the adjusted offense level for the misprision of felony conviction to get to a combined adjusted offense level of twenty-two, rather than twenty-one.[11] Because there is no increase in offense level for only one unit under § 3D1.4, the final adjusted offense level after a three-level reduction for acceptance of responsibility under § 3E1.1 should have been eighteen. *See United States v. Cabaccang*, 481 F.3d 1176, 1187 n.6 (9th Cir. 2007) (reviewing a sentence imposed in accordance with § 3D1.4 and stating that because "the total number of units was one . . . no more increases in offense level were warranted"); *see also United States v. Leni-ear*, 574 F.3d 668, 671 n.2 (9th Cir. 2009) (discussing § 3D1.4 and stating "[t]he count with the highest offense level constitutes one unit, as does each count that is either equally serious or between one and four levels less serious").

**[8]** Consequently, we vacate Goodbear's sentence for the misprision of felony offense and remand for resentencing.

### III

The district court properly applied a four-level enhancement as directed by USSG § 2A2.2(b)(2)(B) because the belt used by Adrian Goodbear when beating his six-year-old daughter to death qualified as a dangerous weapon. Further, the district court did not abuse its discretion in applying the two-level enhancement under USSG § 3B1.4 after finding

---

[11]Specifically, the district court stated: "the adjusted offense level for Group 1 is 11; zero units. The adjusted offense level for Group 2 is 21; that gives rise to 1 unit. The total number of units, 1. The greater adjusted offense level, 21. *The increase in the offense level is 1.*" (emphasis added).

that it was reasonably foreseeable to Goodbear that Adrian Goodbear would use K.H., a minor, to avoid being held responsible for the murder of Lyrik. We therefore affirm the application of the sentencing enhancements under §§ 2A2.2(b)(2)(B) and 3B1.4.

There was plain error in sentencing Goodbear to 37-months for misprision of felony because that sentence exceeds the statutory maximum of 36 months in 18 U.S.C. § 4. Consequently, we vacate Goodbear's sentence for the misprision of felony offense and remand for resentencing.

**AFFIRMED IN PART, SENTENCE VACATED IN PART, and REMANDED FOR RESENTENCING.**